ROBERT GURLEY *v.* STATE OF INDIANA.

[No. 775S177. Filed June 3, 1976.]

*Clifford G. Antcliff, Antcliff & Wilson,* of Greenwood, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant, Appellant, was convicted of murder in the first degree for the hired killing of Donald Stout. He was sentenced to life imprisonment. His appeal presents the following five issues:

1. Admissibility of State's exhibits over an objection that there had been a failure to show an adequate chain of custody.

2. Admission of a State's witness's testimony over an objection of hearsay.

3. Exclusion of a defense witness's testimony of an out-of-court assertion purportedly offered for impeachment purposes rather than to prove the truth of the matter asserted.

4. Error alleged in that the court failed to give a sua sponte admonition cautioning the jury against drawing inferences from a witness' refusal to testify.

5. Error alleged in the trial court's refusal to give four instructions tendered by the defendant.

The evidence most favorable to the State, together with the inferences reasonably drawn therefrom, disclose that the defendant and Henry Cobb had been hired to kill the decedent, Stout, by Mrs. Stout and her paramour, Richard Johnson, in order that they could collect life insurance benefits. In a large part, the State's evidence was supplied by Cobb and the defendant's lady friend, Penny Knipp, both of whom were granted immunity from prosecution.

The defendant, Cobb and Johnson had been acquaintances and fellow employees in Indianapolis three or four years prior to the crime, but Johnson had left the employment to go into the insurance business, and the defendant had moved to St. Louis. In late December, 1967 or early January, 1968, Johnson contacted Cobb and told him that he and his secretary, Mrs. Stout, wanted to kill Stout and ask if Cobb knew anyone who would want the job. Cobb replied that he did not, but later he recalled the defendant and remarks the defendant had made several years earlier, including that he would be capable of committing murder and would like to do it for hire. A few days prior to the murder, the defendant met with Cobb and Johnson and discussed the details for the murder of Stout.

On the evening of January 19, 1968, the defendant and Cobb went to an Indianapolis tavern in furtherance of their planned murder. They had never seen their victim, but he had been described to them. When he arrived as expected, one of them telephoned Penny Knipp who, in response then telephoned the tavern and asked to speak to Stout. When Stout responded to the call of his name in the tavern, Knipp hung up the telephone, but the identity of Stout had been thusly confirmed. Later in the evening, Knipp repeated the telephone call to Stout. This time, however, she identified herself as a friend of

Stout's wife and invited him to meet her at a specified address which had been furnished to her by Cobb and the defendant.

In response to the second telephone call from Knipp, Stout left the tavern and drove towards the address mentioned. The defendant and Cobb drove by a different route and arrived there ahead of him. As Stout arrived, Cobb shouted his name, and Stout stopped his automobile and lowered the window. Cobb then produced a handgun and announced a robbery. On command, Stout moved to the front passenger seat of his automobile. Cobb got into the rear seat, and the defendant got into the driver's seat. The defendant then drove a short distance, stopped the vehicle, and he and Cobb demanded Stout's money. Cobb then gave the gun to the defendant who proceeded to shoot Stout in the back of the head and two additional times in the left temple. The defendant and Cobb then wiped the interior of the automobile to eradicate their fingerprints and returned on foot to Penny Knipp's automobile which they had been using.

## ISSUE I

Upon the offer into evidence of the shell casings and bullets that had been recovered at the scene of the crime by the witness who investigated the crime, their admission was objected to upon the grounds of an insufficient showing of a chain of custody during the seven years elapsed between the date they were recovered and the date they were admitted into evidence. The witness had testified that he had recovered the exhibits, placed them into two separate boxes, marked the boxes for identification and deposited them in the police custody room on the same date. He had seen the exhibits there several times since, although he did not know exactly how many, and he acknowledged that personnel in the crime laboratory would have had possession of them during some period in the interim and that he could not identify all of the persons who might have had custody of such exhibits between

the time he deposited them in the custody room and the time that he withdrew them for trial use.

Defendant apparently would require more of the chain of custody rule than does this Court. We have held that where nonfungible demonstrative evidence is to be admitted, it is sufficient that the chain of custody strongly suggests the whereabouts of the exhibit at all times. *Frasier* v. *State,* (1974) 262 Ind. 59, 312 N.E.2d 77. A mere possibility that nonfungible evidence could have been tampered with will not make such evidence inadmissible. *Loza* v. *State,* (1975) 263 Ind. 124, 325 N.E.2d 173.

The defendant has pointed out no gaps in the chain of custody but merely alleges the possibility of tampering. In view of the nature of the evidence and the testimony of the identifying witness, the existence of such a possibility did not render the exhibits inadmissible.

## ISSUE II

During redirect examination of a State's witness, the prosecutor requested and obtained permission of the court to ask a question omitted upon direct examination. The question had been previously asked and objected to upon the grounds that it was outside the scope of the cross examination, and the objection had been sustained. Specifically, the witness was asked whether his investigation had disclosed that the defendant and Cobb had been paid $1,000.00 each by Johnson. When asked as an omitted question, the defendant objected but did not state any grounds therefor. In his motion to correct errors and upon appeal, he urges that the answer was hearsay. Inasmuch as no grounds for the objection were stated at the trial, the error was not assignable by motion to correct errors and is not available upon appeal. In order to be available upon appeal, an objection to offered testimony must have been premised upon specific grounds. *Jethroe* v. *State,* (1974) 262 Ind. 505, 319 N.E.2d 133, 137. It should be noted in passing, however, that the

question may or may not have elicited an answer excludable under the hearsay rule, and hence it was not objectionable upon that basis. It did, however, call for the witness's conclusion rather than for facts known to him and was objectionable as thusly invading the province of the jury.

## ISSUE III

During redirect examination of defense witness, Johnson, he was asked if he knew whether the State's witness, Wanda Stout, had been given a polygraph test. The prosecutor interposed preliminary questions and it was revealed that the witness's answer upon that matter would be based upon the out-of-court statement of another person, and an objection was sustained. The defendant contends that the out-of-court assertion was not offered as evidence of its truth but rather was offered as evidence to impeach the State's witness, Stout, and was, therefore, not precluded by the hearsay rule.

The defendant's position upon this issue is untenable. Not only had there been no foundation laid for the impeachment of Wanda Stout, but neither was any offer made to prove what the witness's answer to the excluded question would have been. To provide the basis for reversal, excluded testimony must appear in the record—not the mere question and the fact that the answer was excluded. This is done by making an offer to prove what the answer, if permitted, would have been. Otherwise, the Court has no means of knowing what was excluded. *Chatman* v. *State*, (1975) 263 Ind. 531, 334 N.E.2d 673.

## ISSUE IV

State's witness, Wanda Stout, had refused to answer a number of questions and invoked the protection of the Fifth Amendment to the United States Constitution. No defense motions were addressed to such actions, but in the motion to correct errors and upon appeal, the defendant asserts that the court should have given a sua sponte admonition to the

jury, citing *Aubrey* v. *State*, (1974) 261 Ind. 692, 310 N.E.2d 556. He charges that since the witness was an alleged accomplice, her refusal to answer the questions might well reflect adversely against the defendant as well as against herself. The defendant alludes several times in his brief to the court's refusal to admonish the jury upon this matter, but he obviously intended to reflect its failure, rather than its refusal, as there was never any request for such an admonition. In *Aubrey* v. *State, supra,* we reversed because the trial court had refused a requested admonition—not failed to give one upon its own volition. The defendant's objection upon this point, coming as it did, for the first time in his motion to correct errors, came too late. *Brown* v. *State*, (1964) 245 Ind. 604, 201 N.E.2d 281; *Crocker, et al.* v. *Hoffman*, (1874) 48 Ind. 207; *Arthur* v. *State*, (1976) 264 Ind. 419, 345 N.E.2d 841.

ISSUE V

The trial court refused four of the defendant's tendered instructions. One of such instructions related to the evaluation of the credibility of witnesses. The other three concerned lesser included offenses of first degree murder, and in particular, manslaughter.

We have frequently held that the faliure to give a tendered instruction is not error when the subject matter of that instruction was adequately covered by other instructions. *Lewis* v. *State*, (1976) 264 Ind. 288, 342 N.E.2d 859; *Loftis* v. *State*, (1971) 256 Ind. 417, 269 N.E.2d 746. In the case at bar, the jury was adequately instructed upon the evaluation of credibility by final instructions 4, 10 and 15.

The jury was not instructed that it could find the defendant guilty of the lesser included offense of manslaughter, notwithstanding three tendered instructions in this regard. They were refused by the court, because the statute of limitations precluded a prosecution for manslaughter. Ind. Code § 35-1-3-4 (Burns 1975).

We find no Indiana case discussing the propriety of instructing a jury upon a lesser included offense for which the statute of limitations had run. The weight of authority from other jurisdictions is that if the defendant could not be convicted of the lesser included offense, the instructions upon such offense are properly refused. *Chaifetz* v. *United States*, (1960) 109 U.S. App. D.C. 349, 288 F.2d 133, *reversed on other grounds*, (1961) 366 U.S. 209, 81 S.Ct. 1051, 6 L.Ed.2d 233; *People* v. *Lohnes*, (1973) 76 Misc.2d 507, 351 N.Y.S.2d 279; Annotation 47 ALR 2d 887 (1956).

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J. and Arterburn and Hunter, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 348 N.E.2d 16.