**Michael DIER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 481S98.

Supreme Court of Indiana.

Dec. 15, 1982.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1(2) (Burns 1979), Robbery, Ind.Code § 35–42–5–1 (Burns 1979), Burglary, Ind.Code § 35–43–2–1 (Burns 1979), Theft, Ind.Code § 35–43–4–2 (Burns 1979), and of being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns 1979) and was sentenced to a total of one hundred and fifty-four (154) years imprisonment.* This direct appeal seeks review upon the following issues:

---

* The trial court subsequently vacated the habitual offender conviction and reduced the sentences to thirty (30) years each on the murder, robbery and burglary counts, and four (4) years

(1) Whether the trial court erred in denying Defendant's motion for a continuance to enable him to depose a witness.

(2) Whether the trial court erred in admitting two exhibits into evidence.

(3) Whether the trial court erred in permitting an in-court demonstration.

(4) Whether the testimony of one witness violated Defendant's Sixth Amendment right to counsel.

(5) Whether the guilty verdict was sustained by the evidence.

On October 31, 1979, three masked intruders forced their way into the residence of Dr. Nelson Wolfe, restrained him and other members of his family and committed a robbery therein. Immediately after their departure, Dr. Wolfe died of acute cardiac arrhythmia.

## ISSUE I

Defendant contends that the trial court committed reversible error by denying Defendant's motion for a continuance to depose witness Thomas Dowdle. Defendant asserts that Dowdle, who implicated Defendant in the Wolfe robbery, was not made available for a deposition until immediately prior to the trial, which did not allow Defendant adequate time either to prepare to question the witness or to use the deposition intelligently at trial.

On March 3, 1980, Defendant filed a discovery motion. The State responded by giving Defendant a copy of witness Dowdle's statement implicating Defendant in the crimes. Dowdle was incarcerated in Columbus, Ohio from April 1980 until immediately prior to the July 21, 1980 trial. On June 27, Defendant moved for a continuance in order to permit him to depose Dowdle. Defendant noted the difficulties in scheduling such a deposition because Dowdle was in Ohio and also argued that additional time would be required to prepare for trial following the deposition. The trial court overruled this motion. On July 1, Defendant filed a notice that he intended to depose Dowdle as soon as Dowdle was

on the theft count, said sentences to run con-

available in the Jefferson County Jail. Dowdle was not moved to that facility until July 18, at which time Defendant renewed his motion for a continuance. The trial court again denied the motion. At the outset of the trial, Defendant renewed his motion for a continuance and also requested that, if the motion were overruled, Dowdle not be permitted to testify. The trial court overruled the motion and Dowdle testified at trial, over Defendant's objection.

A motion for a continuance based on non-statutory grounds may be granted in the trial court's discretion. Ind.R. Trial Procedure, TR. R. 53.4, *White v. State,* (1975) 263 Ind. 302, 330 N.E.2d 84, *Minton v. State,* (1978) 269 Ind. 39, 378 N.E.2d 639. An abuse of discretion may be demonstrated only by a showing among other requirements, that the defendant would be harmed by a denial of the requested continuance. *King v. State,* (1973) 260 Ind. 422, 296 N.E.2d 113. In the instant case, Defendant has failed to meet that burden.

Defendant received a copy of Dowdle's statement and acknowledged that one reason for seeking to depose Dowdle was to prepare an attack upon his credibility. Defense counsel's cross examination of Dowdle effectively challenged the witness' credibility, his recall of detail surrounding his contact with Dier, and his motivations for testifying. In light of this record and without a showing of the specific manner in which a continuance could have averted harm to the defendant, we cannot say that there was any abuse.

Defendant also requested that, if the continuance were overruled, Dowdle not be permitted to testify. This remedy is sometimes available, as a sanction, when it is shown that the State has deliberately refused to comply with the Court's discovery order. *Gregory v. State,* (1972) 259 Ind. 295, 300, 286 N.E.2d 666, 670. Defense counsel acknowledged the State's "superhuman effort of going through the red tape * * * to try to make Mr. Dowdle available

currently.

to use." A sanction against the State was clearly not in order.

## ISSUE II

State's Exhibits Nos. 4, 9, and 33 are fingerprint evidence and tie Defendant to the scene of the crime. Exhibit No. 4 is a card bearing a full set of fingerprints purporting to be the print of the defendant, as evidenced by his signature and the person who took the impressions. It was a record of the Cincinnati Police Department, made September 21, 1969. Exhibit 33 is the same type of card, bearing a full set of fingerprints, purporting to be the prints of the defendant, as evidenced by his signature, and the signature of Terry Guffey who took the impressions for the New Albany, Indiana Police Department on February 11, 1980. Exhibit 9 is a fingerprint impression on a transparent plastic film with an adhesive substance on one side, designed for the express purpose of transfixing latent fingerprints from their repository. The film has been affixed, fingerprint side in, to the back of a card and attached to a photograph of the print.

Through the testimony of several witnesses, it was established that the print preserved by Exhibit 9 was taken or "lifted" from a door inside the Wolfe residence and that it was the same as one of the prints impressed upon Exhibits 4 and 33 and, hence, was that of the defendant.

The defendant objected to the admission of the exhibits upon the grounds that the chains of custody had not been established with such specificity as to eliminate the possibility of tampering. His objections were properly overruled.

"Defendant would have us apply the strict rules applicable to fungible evidence readily subject to tampering. However, the chain of custody rule applies with diminishing strictness as the exhibits concerned become decreasingly susceptible to alteration, tampering or substitution."

*Coleman v. State,* (1975) 264 Ind. 64, 69, 339 N.E.2d 51.

The mere possibility of tampering will not render evidence inadmissible. *Starkey v. State,* (1977) 266 Ind. 184, 361 N.E.2d 902. In the case of non-fungible goods, it is sufficient if the chain of custody strongly suggests the whereabouts of the exhibits at all times. *Gurley v. State,* (1976) 264 Ind. 552, 348 N.E.2d 16. All evidence is not subject to the chain of custody rule. *Woodard v. State,* (1977) 267 Ind. 19, 24, 366 N.E.2d 1160, 1164. "If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit it merely upon the basis of testimony that the item is the one in question and is in a substantially unchanged condition." *McCormick on Evidence,* 2d Ed. § 212, p. 527. *In accord Duncan v. State,* (1980) Ind., 409 N.E.2d 597, 601.

Exhibits Nos. 4 and 33 were identified as records kept by the Cincinnati and New Albany Police Departments in the regular course of business. They are unique and appear regular upon their face. Although subject to challenge, as is any evidence, the adequacy of the foundation for their admission is clear; and if Defendant genuinely desired to dispute that prints upon such exhibits were his, he had only to submit, for comparison, prints which were admittedly his own.

The admissibility of Exhibit No. 9 presents a different question. Obviously the place where the latent print was found and retrieved was vital to the issue of whether or not Defendant had been there. Therefore, some showing must be made that the prints found to match those known to be those of the accused were actually the prints retrieved from the scene of the crime.

The record reveals that on the morning of November 1, 1979, the day following the robbery-murder, Albert Sohl of the Evidence Technician Unit, of the Louisville, Kentucky Police Department went to the Wolfe residence, at the request of the New

Albany police, to assist in investigating the crime. While there, he discovered an uncontaminated, latent fingerprint on the kitchen side of the Kitchen-dining room door. He dusted the area of the print with a black powder used for such purposes, took a polaroid photograph of the accented print and then extricated or "lifted" the print onto a transparent adhesive tape which he then mounted onto a white card. Both the mounted print and the photograph were then marked by him. On the card he wrote "# 14" and "From dining-kitchen door—kitchen side (photos)." On the photograph he wrote "# P–14" the date "11–1–29" and his initials, "OAS". He placed these items, together with other similar items and evidence in an envelope designed for such purpose. "Its a standard Metro Correction Identification envelope." The envelope was marked to identify the investigation to which it related,—case, date, offense, address, complaining party—and sealed. It was then taken to the Technician Unit office where it was kept until the following morning when it was released to George Elder, who signed for it. Elder was Supervisor of the Identification Division of the Metropolitan Correctional Service Department, which was the fingerprint agency for the Louisville Police Department.

On November 18th, Detective Griffey, of the New Albany Police Department, took Exhibits Nos. 4 and 9 to Elder and requested a comparison, which he made and concluded therefrom that the impressions on the two exhibits were made by the same finger.

■ There has been no accounting for how Ex. 9 got to Detective Griffey or where it was between November 13th and 18th. However, both parts of the exhibits bore distinctive markings from the beginning. Witness Sohl testified that they were the print lifted by him and the photograph which he had taken of it; and Witness Elder testified that they were the items compared by him with the defendant's fingerprint card, exhibit 4. Upon this record and the absence of any indication that Exhibit 9 had, in some manner, been falsified,

there is no basis for excluding the fingerprint identification evidence. Defendant has only pointed out some innocuous irregularities and the possibility that the evidence might have been falsified, and that is insufficient. *Starkey v. State, supra.*

## ISSUE III

At trial, fingerprint expert Allen Sohl demonstrated the method employed in obtaining fingerprints from the Wolfe residence. He dusted and photographed his own print which he had impressed upon a cellophane wrapper. Verbally, he contrasted the ease with which he obtained this print with the difficulty that he had had in obtaining the defendant's print from a painted surface in the Wolfe residence. Defendant argues that this demonstration was prejudicial and misleading and should have been excluded as it did not accurately portray the actual conditions under which the latent print had been impressed, lifted from the Wolfe residence and subsequently photographed.

■ The decision to permit or refuse a courtroom demonstration is a matter within the trial court's discretion which this Court will not disturb, absent clear abuse. *White v. State,* (1967) 249 Ind. 105, 229 N.E.2d 652. The trial court stated that the demonstration could be a relevant aid to understanding the fingerprint evidence and to orienting jurors to the complexities of obtaining such evidence.

Defendant also asserted that another State's witness was more qualified, than was Sohl, to conduct the demonstration. Sohl, however, testified that he belonged to numerous fingerprint organizations, had completed special programs in fingerprint analysis, and was routinely assigned to fingerprint investigations. This testimony qualified Sohl as an expert, and the fact that another fingerprint expert also testified in the State's case-in-chief is of no moment. We cannot say that the ruling on the demonstration was an abuse of discretion.

## ISSUE IV

Defendant argues that the State interfered with his right to counsel under the Sixth Amendment by the use of an informant to interrogate him.

While Defendant was in custody at the Hamilton (Ohio) County jail, inmate Carl Jackson was placed in an adjoining cell. Jackson and the defendant engaged in conversations during which time Defendant asked Jackson whether it was possible to manufacture fingerprints for use as evidence. He then told Jackson about the robbery of the Wolfe residence and the death of Dr. Wolfe. Jackson was moved back to his original cell after these conversations. Jackson had previously been convicted of two earlier offenses and was facing the potential of an Ohio habitual offender charge. He approached the law enforcement officials and divulged the information obtained from Defendant for the purpose of helping himself. The officials then promised to help Jackson, and he, thereafter, attempted to engage Defendant in conversations but received no new information from him. Jackson related such facts and circumstances at trial.

■ Defendant contends that the officials had moved Jackson next to him under a pre-arranged plan to obtain information from Defendant. However, there is no evidence to support this claim. Defendant also asserts that Jackson was aware that he might help himself by engaging him in conversations and reporting the information thereby gained and that the authorities were aware that he might confide in an ostensibly sympathetic jailmate. Contrary to Defendant's contention, no case law proscribes such activity.

The Supreme Court addressed this issue in *United States v. Henry*, (1980) 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115. Henry involved a paid informant who had been told, prior to his conversations with the Defendant, to be alert for statements by Henry while in jail. Chief Justice Burger wrote for the Court that the Defendant's statements to the informant should not have been admitted at trial. The Court

held that "Even if the [police] statement is accepted that [they] did not intend the informant would take affirmative steps to secure incriminating information, [they] must have known that such propinquity would lead to that result." *Id.* 447 U.S. at 271, 100 S.Ct. at 2178, 65 L.Ed.2d at 122. "By intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the government violated Henry's Sixth Amendment right to counsel." *Id.* 447 U.S. at 274, 100 S.Ct. at 2189, 65 L.Ed.2d at 125.

Similarly, in *Iddings v. State*, (1981) Ind. App., 427 N.E.2d 10, an informant had been induced by police to be alert for statements made by other prisoners and to engage in conversations with fellow prisoners, with the implicit goal of obtaining and reporting admissions in exchange for favorable treatment. The Court of Appeals held that the State had not proved an intentional relinquishment of a known right.

■ The principles of *Henry* and *Iddings*, however, do not prohibit the introduction of spontaneous statements that were not elicited by government action. The Sixth Amendment is not violated when a passive listener merely collects, but does not induce, incriminating statements. Defendant was not induced to talk with Jackson. Nor was Jackson instructed by law enforcement officials to "interrogate" Defendant and, thus, to interfere with his relationship with counsel. Jack's reception of incriminating statements was a mere fortuitous circumstance which the State could not be held to have deliberately elicited or foreseen.

## ISSUE V

Defendant's sufficiency of evidence challenge presumes the improper admission of evidence hereinbefore noted, to wit, the fingerprint exhibits admitted into evidence and the testimony of witnesses Dowdle and Jackson. However, in view of our determination of such alleged errors contrary to Defendant's contention, this challenge is without foundation.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.