**Ray ARMAND, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 683S236.

Supreme Court of Indiana.

March 5, 1985.

Francis J. Schafer, Jr., Merrillville, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of attempted robbery, a class A felony, Ind.Code §§ 35-41-5-1 and 35-42-5-1 (Burns 1979) and was sentenced to twenty (20) years imprisonment. His direct appeal presents three (3) issues for our review, as follows:

(1) Whether the trial court erred when it instructed the jury that duress is not a defense to the charge of attempted robbery;

(2) Whether Ind.Code § 35-41-3-8 (Burns 1979) is unconstitutionally vague;

(3) Whether the trial court erred in admitting into evidence State's exhibit number 3, a gun, over Defendant's objection that an insufficient chain of custody had been shown.

The record discloses that at approximately 1:00 p.m. on October 20, 1982, Laura Sheridan, holding her three year old daughter in her arms, had just got out of her automobile in the Venture store parking lot in Merrillville, Indiana. As she walked toward the back of her automobile, the Defendant grabbed her and hit her on the top of her head. He then demanded her purse; but Mrs. Sheridan did not release it, fearing that she would drop her daughter. The Defendant then hit her at least a half dozen times, and she and her daughter fell to the ground. She looked at the Defendant who was standing over her and saw in his hands what appeared to be the butt of a gun. All that she could see was a brown handle. She then pushed and kicked the Defendant and was able to stand, still holding her daughter. She screamed, and the Defendant hit her again and ran. She observed the Defendant leave the parking lot in an automobile being driven by another man.

Mrs. Sheridan suffered a one and one-half inch gash wound to the top of her head and a cut on her forehead. She also suffered from headaches for several days.

Another witness, who was in an automobile approximately ten feet distant from Mrs. Sheridan, saw a car enter the aisle, going the wrong direction, and park. One of the two men in that car got out and grabbed Mrs. Sheridan, hit her, and forced her to the ground. Upon witnessing these events, the witness sounded the horn of her automobile, opened her car door and began screaming. She testified that she was trying to get someone's attention because she had seen that the Defendant was holding a gun and had hit the victim with it. She saw the Defendant run to the automobile from which he had previously exited and observed the automobile leaving the parking lot. She gave police officers the vehicle's license plate number.

Subsequently police apprehended the Defendant and his companion, searched Defendant's apartment, and found a .22 caliber revolver with a black frame and brown plastic grips in a garbage can in the kitchen.

The Defendant testified that on October 20, 1982, he was driving toward a friend's house when he encountered Robert Shorts, a man he had known in school, who asked him if he would give him a ride to Crown Point where he had a, scheduled court appearance. During the trip to Crown Point, the two men stopped to use some drugs provided by Shorts. The Defendant stated that the drugs, "tees and blues," made him shaky and nervous. On the return trip, the Defendant stopped at a service station to buy gasoline. When he returned to his car, Shorts, who had moved into the driver's seat, pointed a gun at him and told him to get in on the passenger side. Shorts then told him that he wanted money for the drugs that the Defendant had used and drove into the Venture store's parking lot. Shorts parked the car, threatened to hurt the Defendant and his family if he did not get him some money, gave him a gun, and told him to "get her." The Defendant walked toward Mrs. Sheridan and attempted to take her purse. He stated that they had a little "scuffle" but that he did not intentionally strike her. When she resisted, he became frightened and ran back to his car, where he threw the gun upon the seat and saw Shorts put it into his pocket. The two men then went to the Defendant's apartment where both men were subsequently arrested.

## ISSUE I

In its final instruction number 8, the trial court informed the jury that duress is not a defense to the crime of attempted robbery. Its instruction was based upon Ind.Code § 35–41–3–8 (Burns 1979) which provides:

"(a) It is a defense that the person who engaged in the prohibited conduct was compelled to do so by threat of imminent serious bodily injury to himself or another person. With respect to offenses other than felonies, it is a defense that the person who engaged in the prohibited conduct was compelled to do so by force or threat of force. Compulsion under this section exists only if the force, threat, or circumstances are such as would render a person of reasonable firmness incapable of resisting the pressure.

"(b) This section does not apply to a person who:

"(1) Recklessly, knowingly, or intentionally placed himself in a situation in which it was foreseeable that he would be subjected to duress; or

"(2) Committed an offense against the person as defined in I.C. 35–42 [35–42–1–1—35–42–5–1]."

Defendant argues that the defense of duress is available to one accused of *attempted robbery*, that evidence of duress existed, and that, consequently, the trial court erred in giving its instruction number 8. His argument is without merit.

The exception set forth in Ind.Code § 35–41–3–8(b)(2) clearly applies to robbery, an offense against the person proscribed by Ind.Code § 35–42. Defendant argues, however, that inasmuch as he was charged with attempted robbery under the attempt statute, Ind.Code § 35–41–5–1, the exception does not apply. In *Kee v. State*, (1982) Ind., 438 N.E.2d 993, we were faced

with a similar argument regarding an attempted murder conviction. Therein, the trial court had informed the jury that the defense of duress did not apply to the attempted murder charge. We noted:

"Defendant argues that although the defense of duress is not available upon a charge defined in Ind.Code § 35–42 (which includes murder) it is, nevertheless available upon a charge of attempted murder. He reasons that the statute which defines duress and makes it available generally, excludes its use only specifically. One specific exclusion is as to 'a person who: * * * commited an offense against the person as defined in I.C. 35–42.' He further argues that the crime of attempted murder is not defined in I.C. 35–42, but in I.C. 35–41–5–1 and that, therefore, the exclusion does not apply. The fallacy lies in the conclusion that I.C. 35–41–5–1 defines the crime of attempted murder which, standing alone, it does not. It is definitive of the crime charged only when read in conjunction with I.C. 35–42–1–1 (Murder). Attempted murder is, therefore, an offense against the person as defined in I.C. 35–42, and the defense of duress is expressly excluded."

438 N.E.2d at 994.

■ Similarly, we hold that attempted robbery is an offense against the person as defined in Ind.Code § 35–42 and that the trial court properly instructed the jury that the defense of duress was not applicable in the case at bar.

### ISSUE II

■ Defendant claims that although Ind.Code § 35–41–3–8(b)(2) clearly forecloses the defense of duress for crimes described in Ind.Code § 35–42, its application to a charge of attempt of a crime defined in Ind.Code § 35–42 cannot be ascertained from the plain words of the statute. Hence, he argues that the statute is unconstitutionally vague. We cannot agree. Attempted robbery is a crime necessarily defined by both Ind.Code § 35–41–5–1 and Ind.Code § 35–42–5–1. We hold that a person of ordinary intelligence would know that the defense of duress is unavailable to one charged with attempted robbery or with any other attempted crime against the person.

### ISSUE III

■ Police Officer Ronald Eich testified that he and another officer found a gun in Defendant's apartment. Eich placed his initials and the date on the gun, put it in a brown paper bag, and turned the bag over to the evidence officer at the police station. He then retrieved the bag from the evidence room on the day of trial. He further testified that the gun was in substantially the same condition as when he found it, but he could not say with certainty that the gun had at all times between October 20, 1982 and March 7, 1983 remained in the evidence room. Defendant objected to the admission of the gun, arguing that the State had failed to show a proper chain of custody. His objection was properly overruled. In *Dier v. State*, (1982) Ind., 442 N.E.2d 1043, we addressed a similar contention, as follows:

"The mere possibility of tampering will not render evidence inadmissible. *Starkey v. State*, (1977) 266 Ind. 184, 361 N.E.2d 902. In the case of non-fungible goods, it is sufficient if the chain of custody strongly suggests the whereabouts of the exhibits at all times. *Gurley v. State*, (1976) 264 Ind. 552, 348 N.E.2d 16. All evidence is not subject to the chain of custody rule. *Woodard v. State*, (1977) 267 Ind. 19, 24, 366 N.E.2d 1160, 1164. 'If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit it merely upon the basis of testimony that the item is the one in question and is in a substantially unchanged condition.' *McCormick on Evidence*, 2d Ed. § 212, p. 527. *In accord*

*Duncan v. State,* (1980) [274] Ind. [144], 409 N.E.2d 597, 601."

442 N.E.2d at 1046.

Here, the undisputed testimony of Officer Eich leaves little, if any, possibility that someone had tampered with the gun.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.