James W. HENNING, IV, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 683 S 206.

Supreme Court of Indiana.

May 17, 1985.

Rehearing Denied July 11, 1985.

Richard J. Conroy, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). The trial court reduced the presumptive class A felony 30-year term of imprisonment to 20 years, and sentenced Defendant accordingly. We have restated and re-ordered the various contentions Defendant raises on this direct appeal as the following five issues:

(1) Whether the trial court erred in admitting State's Exhibit 20, a brick, without a proper showing of the chain of custody;

(2) Whether the trial court erred in refusing to instruct the jury on certain lesser-included offenses;

(3) Whether the trial court erred in providing the jury with extraneously marked copies of the jury instructions;

(4) Whether the evidence was sufficient to sustain the verdict;

(5) Whether the trial court erred in determining that Defendant had been found guilty of an offense for which the sentence was non-suspendable.

The evidence most favorable to the State revealed that during the early morning hours of October 31, 1981, Defendant and another summoned a taxi driven by the victim. After they directed the victim to drive to a suburban area, they had him stop twice, first at a home where both men exited the taxi, second at a home where only Defendant's companion exited, then returned. After the companion returned to the taxi a second time they instructed the driver to proceed to a darkened area. The victim had by then become fearful and had tried to drive into a nearby driveway when he was attacked from behind. The passengers choked him and beat him about the head, leaving a deep gash. The victim lost consciousness during the attack, eventually received a wound that required about 21 stitches, and suffered continuing neck pain. About $50.00 was taken from the taxi. Although the other passenger fled, police discovered Defendant near the scene of the attack. Other relevant facts are stated below.

### ISSUE I

Defendant argues that the trial court committed reversible error when it admitted State's Exhibit 20, a brick, into evidence, because the State had not established a proper chain of custody. Defendant further argues that the trial court erred in allowing the brick to be taken to the jury room. We do not agree.

During their investigation police officers discovered a blood-stained brick inside the taxi. They photographed the inside of the taxi, including the brick, and retained the brick as evidence. However, the officers did not specially mark it for later identification. When the State offered the brick into evidence Defendant objected, arguing that the State had failed to establish that it was the same brick taken from the taxi.

Addressing a similar contention this Court recently said:

"The mere possibility of tampering will not render evidence inadmissible. In the case of non-fungible goods it is sufficient if the chain of custody strongly suggests

the whereabouts of the exhibits at all times. All evidence is not subject to the chain of custody rule. If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit it merely upon the basis of testimony that the item is the one in question and is in a substantially unchanged condition." (Citations omitted.)

*Armand v. State,* (1985) Ind., 474 N.E.2d 1002, 1005, *quoting Dier v. State,* (1982) Ind., 442 N.E.2d 1043, 1046.

■ In this case an officer testified that State's Exhibit 20 was the brick taken from the taxi because it appeared to be in the same condition, appeared to have bloodstains, and resembled the brick observed in photographs taken of the inside of the taxi the night of the crime. A brick, unlike more fungible items such as drugs or chemicals, is relatively impervious to change. Although better police practice would have been to mark the brick when it was retained, the officer's testimony here was sufficient to satisfy the requirements stated in *Dier.*

■ Defendant also argues that the trial court should not have allowed the jury to take the brick into the jury room. The trial court is vested with broad discretion in determining whether to allow exhibits to be taken to the jury room. In exercising its discretion the court should consider whether the material will aid the jury in a proper consideration of the case, whether any party will be thereby unduly prejudiced, and whether the material may be subjected to improper use by the jury. *See, e.g., Torres v. State,* (1982) Ind., 442 N.E.2d 1021, 1027–28, *citing Thomas v. State,* (1972) 259 Ind. 537, 540, 289 N.E.2d 508, 509.

■ In this case the brick was relevant in demonstrating the force of the attack upon the victim, which supports the inference that the attackers intended to render the victim unable to resist, then rob him. Moreover, Defendant has never denied that

he was present, but instead has argued that he did not participate in the attack. He does not demonstrate how his defense was prejudiced by the brick's having been allowed into the jury room. Finally, the record includes no evidence that the jury could have or did misuse the brick during deliberations. We conclude that the trial court did not err in allowing the jury to study the brick during deliberations.

### ISSUE II

■ Defendant argues that the trial court erred when it refused to give certain instructions on the lesser-included offenses of class C and class B felony robbery, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), and battery, a class A misdemeanor, Ind. Code § 35–42–2–1 (Burns 1979 Repl.). We find no error because such instructions would not have been consistent with the evidence and would have invited a compromise verdict.

■ In determining whether to instruct the jury that they may return verdicts on lesser-included offenses, the trial court must apply a two-part test. First, by examining the statutes defining greater and lesser-included offenses, and the charging instrument, the court determines whether the lesser-included offenses to be instructed are inherently included in the greater charge, or "factually" included in the charging instrument's allegations of the means by which the greater crime charged allegedly was committed. Second, the court must make a determination of whether, assuming that an offense was committed, the evidence would, *prima facie,* warrant a conviction for a lesser-included offense, or could only warrant a conviction for the principal charge, in which case the lesser-included offense instructions should not be given. *See, Jones v. State,* (1982) Ind., 438 N.E.2d 972, 974–76; *McNary v. State,* (1981) Ind., 428 N.E.2d 1248, 1250–51; *Lawrence v. State,* (1978) 268 Ind. 330, 337–38, 375 N.E.2d 208, 212–213; *Roddy v. State,* (1979) 182 Ind.App. 156, 175–79, 394 N.E.2d 1098, 1110–1112. In this case the

trial court properly refused to give the lesser-included offense instructions under step 2 of this test.

The record conclusively demonstrates that the victim was attacked viciously and struck in the head with a blunt object which left a gash requiring 21 stitches. The victim suffered a neck injury and lost consciousness during the attack. Thus, there is no dispute that the victim was injured.

At the time of this offense our robbery statute, Ind.Code § 35–42–5–1 (Burns 1979 Repl.) (now with amendments Ind.Code § 35–42–5–1 [Burns 1985 Repl.]), provided that robbery resulting in either bodily injury or serious bodily injury was a class A felony. Because the evidence conclusively demonstrated that the victim was injured during the attack, the trial court would have erred in giving an instruction on any robbery offense other than class A felony robbery. Cf. McNary, 428 N.E.2d at 1251 (trial court erred in giving instruction on robbery as a lesser included offense of robbery resulting in bodily injury where bodily injury conclusively shown, but error harmless in particular case).

■ Similarly, the trial court did not err in refusing to give an instruction on battery, a class A misdemeanor. Defendant does not deny that money was taken from the victim during the attack. While the evidence at trial demonstrated that the victim received blows constituting "rude and insolent touching," the *sine qua non* of battery under Ind.Code § 35–42–2–1 (Burns 1979 Repl.), because the evidence also conclusively demonstrated that a robbery took place, and the only question was whether Defendant participated, an instruction on battery was not justified by the evidence, would have invited a compromise verdict, and was properly refused.

### ISSUE III

■ Defendant also claims that the trial court erred in sending the instructions to the jury room. He premises this contention on the fact that several of the copies of the instructions included extraneous under-lines and other marks which Defendant claims unduly emphasized certain phrases in the instructions. While we do not condone the trial court's decision to forward the marked copies of instructions to the jury, we find no reversible error in this case.

Defendant relies on *Cornett v. State,* (1982) Ind., 436 N.E.2d 765. However, this case is distinguishable.

In *Cornett* this Court reversed a conviction for rape because, after the jury had commenced deliberations and requested further instruction, the trial judge, without rereading the instructions in the presence of the parties and counsel, as required by our prior decisions, forwarded heavily marked copies of the final instructions to the jury. Several of the copies included markings and labels that identified which party had submitted the instructions, e.g., "Defendant's Instruction No. 8," *id.*, 436 N.E.2d at 769. One instruction included footnotes referring to the case-law source of some of the instruction's language. *Id.*, 436 N.E.2d at 774. Other copies of instructions "given as modified" included language which, although only partially marked out in the copies forwarded to the jury, had been deleted when the final instructions were given during trial. *Id.*, 436 N.E.2d at 771.

This Court determined that the extraneous marks and language could have led the jury to speculate about the importance of any particular instruction, the reason why one party or the other would have submitted the instruction, the reason why marks appeared on but some of the instructions and what the marks intended to emphasize, etc. *Id.*, 436 N.E.2d at 766–67.

In sending extraneously underlined copies of the instructions to the jury in this case, the trial court approached the line crossed in *Cornett,* and the issue thereby created demonstrates the wisdom of our prior decisions clearly holding that the instructions should not be sent to the jury room, notwithstanding that it may not be reversible error. However, our examina-

tion of the instructions satisfies us that, notwithstanding that four of the thirteen instructions given had some extraneous markings upon them, they were not of such nature that gave rise to a potential for misconstruction or undue emphasis. We, therefore, hold that sending the instructions to the jury room, in this case, was not reversible error.

## ISSUE IV

■ Defendant contends that the evidence presented by the State was not sufficient to sustain the verdict. We initially note our standard of review:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor judge the credibility of witnesses." (Citations omitted.)

*Loyd v. State,* (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant claims that the evidence demonstrated only that he was riding in the taxi when the driver was attacked by the other passenger. However, the victim testified that he picked Defendant and another up and. was instructed to drive to a suburban street where both passengers left together at a home, claiming they wanted to see a "girlfriend." Shortly after they re-entered the taxi they had the driver park at another home nearby where, while Defend-

ant waited in the taxi, the other passenger left for a few moments, then returned with a "club." As the victim tried to pull into a nearby driveway and sounded the horn, he was attacked. The victim testified that he had "four different cuts on my head from all different directions." He testified that he was choked by "[t]wo pairs of hands, I'm almost sure. They were strong."

Defendant claims that because the driver did not unequivocally state that he had attacked him, because he did not flee the area of the crime, and because he had no proceeds of the robbery with him when arrested, the evidence was not sufficient. Further, Defendant claims that he fled the taxi when the other passenger attacked the driver, whose blood had spattered on his clothes.

However, the jury could have inferred, from the driver's testimony, that Defendant and the other passenger, acting in concert, had the driver park on a suburban street, left the taxi together then returned, and that later both attacked him with the intent to rob him. Defendant does not dispute, and the State demonstrated, that money was taken from the taxi when the driver was attacked. The jury was not required to accept Defendant's version of the events. The evidence was sufficient to sustain the conviction.

## ISSUE V

■ Defendant contends that the trial court erred in concluding that it had no authority to suspend the sentence, and he argues that the trial court's comments during the sentencing hearing to that effect require remand for resentencing.[1] Under the facts of this particular case we agree

---

1. During the sentencing the trial court said, among other things:

"The Court would weigh heavily the fact that you have no prior record and served, apparently, for a period of three years with—as I recall—the U.S. Army and presently—or prior to your trial any way (sic)—were employed in a reasonable job in the Airline (sic) industry.

"These are difficult matters for the Court to deal with, counsel, but where you have a young man who, again, apparently—as far as we know, has lived a relatively law-abiding life for some twenty-five years. But you have

to, on one date he allowed himself to become involved in the matter that brought him before the Court.

"As I say, it was not only a Robbery, but a brutal, pointless beating of the victim of that robbery and, as you have indicated, and I'm sure the defendant and the family of the defendant is (sic) well aware that the law requires a mandatory imprisonment of no less than twenty years and that is the law.

\*    \*    \*    \*    \*    \*

"The Court has absolutely no discretion to do anything less than sentence you to a period

with Defendant's contentions, and remand for resentencing.

Arguably, Defendant stood charged with both a class A felony for which the sentence was suspendable, i.e. robbery resulting in bodily injury to the victim, and a class B felony for which the sentence was non-suspendable, i.e. robbery while armed with a deadly weapon. *See,* Ind.Code § 35–42–5–1 (Burns 1979 Repl.) (defining robbery); Ind.Code § 35–50–2–2(a)(4) (Burns 1979 Repl., as amended by Acts 1982, P.L. 204, § 39, now after further amendment Ind.Code § 35–50–2–2(b)(4) [Burns 1985 Repl.]) (providing that class A felony robbery resulting in serious bodily injury or class B robbery committed with a deadly weapon result in sentences which are non-suspendable); Ind.Code § 35–41–1–1 (Burns 1979 Repl., now codified in pertinent part at Ind.Code §§ 35–41–1–4, 35–41–1–25 [Burns 1985]) (defining bodily injury and serious bodily injury respectively). However, he stands guilty only of the class A felony charged and should be sentenced in accordance with the statutes pertaining to that offense. Although he might have been charged with a class A felony (non-suspendable) by the inclusion of an allegation that the injury was a *"serious"* one, he was not so charged. In fact, the only verdict forms submitted to the jury were (guilty of robbery, a class A felony), and (not guilty).

Inasmuch as it is apparent that the trial court was under an erroneous conception that precluded his consideration of suspending any part of Defendant's sentence, we remand this cause for the sole purpose of such consideration and intend to intimate no opinion upon the decision thereon. In all other respects, we affirm the judgment of the trial court.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.

of twenty years imprisonment and that is the judgment of this court, that you be in prison for a period of twenty years.

    \*   \*   \*   \*   \*   \*

"BY MR. MULLINS
And ... this Court views that the Class A Robbery, as charged in the charing (sic) infor-

mation in this cause number, by the State of Indiana, on November 2, 1981, is a non-suspendable class A offense?

"BY THE COURT:
Yes."