Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 14 2014, 9:38 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JEREMY K. NIX**
**CASEY C. MORGAN**
Matheny, Hahn, Denman & Nix, LLP.
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRENT A. BURNWORTH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1401-CR-85 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Jeffrey Heffelfinger, Judge
Cause No. 35D01-1309-FD-198

August 14, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Trent Burnworth ("Burnworth") was convicted in Huntington Superior Court of Class D felony theft and adjudicated a habitual offender. The trial court sentenced Burnworth to one and one-half years for the theft conviction and enhanced his sentence by an additional three years for the habitual offender adjudication. Burnworth appeals and raises three issues, which we consolidate as two and restate as:

I. Whether the trial court abused its discretion when it admitted the stolen pull tabs into evidence; and,

II. Whether Burnworth's aggregate four and one-half year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

**Facts and Procedural History**

On June 8, 2013, Burnworth was a customer of Bernie's Sports Bar ("Bernie's") in Andrews, Indiana. At that time, Bernie's had a type 2 gaming permit, which allowed the bar to participate in pull-tab ticket gaming. Estelle Hawk ("Hawk") was the only employee on the premises on June 8, and, because the roll of pull-tab tickets seemed to be nearing its end, she counted the tickets at the beginning of her shift.

When Burnworth arrived at Bernie's, he purchased a beer. Shortly thereafter, while Hawk was in the kitchen, she heard a noise that sounded like two bottles striking each other. She returned to the bar, observed Burnworth walking around the end of the bar, and asked him if he had been behind the bar. Burnworth stated that he was looking for money he thought he had dropped. He then asked Hawk if he could use the telephone and took the telephone into the bathroom with him.

2

Burnworth was in the bathroom for several minutes, then he returned to the bar area and asked Hawk for his change from his beer purchase. Hawk replied that she had already given him his change. Burnworth then returned to the bathroom, and when he came out, he asked Hawk for a hair dryer. Hawk told Burnworth she did not have a hair dryer. Burnworth then gave Hawk a "dripping wet" five dollar bill to purchase five pull-tab tickets. Burnworth told Hawk he must have dropped money in the toilet.

Burnworth took the five pull-tab tickets and opened them near the front door. He then returned to the bar and presented Hawk with a winning ticket worth $25. Hawk gave Burnworth $25, and he left Bernie's. Hawk was suspicious of Burnworth's behavior and decided to recount the pull-tab tickets on the bar. While she was counting, Burnworth and another individual entered Bernie's. Hawk noticed that when Burnworth saw her counting the pull-tab tickets, he turned around, and left the bar. After she finished counting, Hawk discovered that approximately 30 tickets were missing.

Later that same evening, another customer told Hawk that the toilet in the bathroom would not stop running. When Hawk checked on the problem, she discovered the missing pull-tab tickets in the toilet tank. A number of tickets had fallen down a hole in the tank, which prevented the flapper from closing causing the toilet to run. Hawk retrieved the pull-tab tickets and laid them in the bar office to dry.

Hawk then reported the theft to the police. Deputy Town Marshall Van Jullierat arrived to investigate and observed the pull-tab tickets that Hawk had pulled from the toilet. The tickets were still wet. For some reason, Deputy Marshall Jullierat did not photograph or collect the tickets. Hawk left the pull-tab tickets in the office for a day to

3

dry and then placed them in a plastic bag. A few days before trial, she gave the plastic bag containing the pull-tab tickets to the prosecutor.

On September 26, 2013, Burnworth was charged with Class D felony theft. The charging information was later amended to allege that Burnworth is a habitual offender. A bench trial was held on December 12, 2013. At trial, Burnworth objected to the admission of the pull-tab tickets. The trial court overruled his objection.

The trial court found Burnworth guilty of Class D felony theft, and Burnworth stipulated to the existence of the prior convictions alleged to support the habitual offender allegation. The trial court sentenced Burnworth to one and one-half years for the theft conviction without entering a sentencing statement. The trial court also enhanced the sentence by three years for the habitual offender adjudication. Burnworth now appeals.

### I. Admission of the Pull-Tab Tickets

Burnworth first argues that the trial court abused its discretion when it admitted the pull-tab tickets into evidence because the State failed to present a proper foundation for admission of the evidence. "The decision to admit or exclude evidence at trial is squarely within a trial court's discretion and we afford it great deference on appeal." VanPatten v. State, 986 N.E.2d 255, 260 (Ind. 2013) (citing Carpenter v. State, 786 N.E.2d 696, 702 (Ind. 2003)). And we will not reverse such a decision unless it is clearly contrary to the logic and effect of the facts and circumstances of the case or misinterprets the law. See id.
Furthermore,

4

[e]ven if the trial court abused its discretion in admitting evidence, we leave the judgment undisturbed if that decision is harmless error. Harmless error occurs when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.

Granger v. State, 946 N.E.2d 1209, 1213 (Ind. Ct. App. 2011) (internal citations and quotations omitted).

We initially address Burnworth's claim that the pull-tab tickets are "fungible evidence."[1] Examples of "fungible" items include blood and hair samples and drugs, "whose appearance is indistinguishable to the naked eye." Troxell v. State, 778 N.E.2d 811, 814 (Ind. 2002); see also Mateo v. State, 981 N.E.2d 59, 66 (Ind. Ct. App. 2012), trans. denied. However, the tickets at issue are not "fungible evidence" because they have characteristics capable of eyewitness identification. Rather, they are more properly classified as non-fungible evidence. Therefore, their admission requires a less stringent foundation, because any tampering with the evidence is more likely to be noticed due to the unique character of the tickets. See Hough v. State, 560 N.E.2d 511, 517 (Ind. 1990) (citing Dier v. State, 442 N.E.2d 1043, 1046 (Ind. 1982)).

Next, we observe that a party must lay a proper foundation for admission of physical evidence, like the tickets, into the record. Granger, 946 N.E.2d at 1214.

In Hooper v. State, our supreme court set forth the requirements for admission of physical evidence: "the witness who observed the particular instrumentality must at least state that the item . . . is 'like' the one

---

[1] The State bears a higher burden to establish a chain of custody of "fungible" evidence. See Troxell v. State, 778 N.E.2d 811, 814 (Ind. 2002). Burnworth objected to admission of the pull-tab tickets on the grounds of chain of custody. Tr. p. 30. Burnworth does not specifically argue chain of custody on appeal, but, relying on his conclusion that the pull-tab tickets are fungible, claims that the "State could not establish a reasonable probability that 'Exhibit 1' constituted what it claimed to be and any heightened burden showing the continuous whereabouts of the evidence was not met." Appellant's Br. at 9.

associated with the crime" and "there must be a showing that it is connected to the defendant and the commission of the crime." That is, there is proper foundation for the introduction of physical evidence where 1) the characteristics of the exhibit "can be identified by eyewitness identification"; 2) the witness can identify the item; and 3) the item is relevant to the issues in the case.

Id. (internal citations omitted).

In this case, Hawk pulled the wet pull-tabs from the malfunctioning toilet and laid them to dry in the office at Bernie's. Only Hawk and her husband, who manages the bar, had access to the office on that date.[2] Tr. p. 32. The next day, Hawk gathered the pull-tabs and placed them in a plastic bag. Hawk kept the plastic bag with the pull-tab tickets in the bar office until a few days before trial when Hawk gave the bag containing the tickets to the prosecutor. Hawk testified that she did not remove any pull-tab tickets from, or add any tickets to, the plastic bag. Tr. pp. 29-30. Deputy Marshall Jullierat saw the tickets the day they were pulled from the toilet, but Hawk had not yet placed them in the plastic bag because they were still wet.

On June 8, 2013, Hawk counted Bernie's supply of pull-tab tickets when her shift started, and she counted them again after Burnworth left the bar, but before she found the tickets in the toilet. Only three people were inside Bernie's between the start of Hawk's shift, and the second time she counted the tickets when she discovered that approximately 30 pull-tab tickets were missing. Burnworth paid for five pull-tab tickets with a wet five dollar bill, and he told Hawk that he dropped the money in the toilet. Burnworth opened

---

[2] On some date prior to trial, Bernie's hired a bartender who also had access to the office. Tr. p. 34.

6

his five tickets near the front door, returned to the bar area and handed Hawk a winning ticket in the amount of $25.

At trial, Hawk identified the pull-tab tickets as the tickets she removed from the toilet. The tickets were clearly relevant to the theft charge, and Hawk retained possession of them until she gave them to the prosecutor a few days before trial. Burnworth's claim that the tickets could have been tampered with because they were not "kept in a controlled setting", see Appellant's Br. at 8, is simply speculation that goes to the weight, rather than to the underlying admissibility, of the evidence. Moreover, admission of the actual tickets was cumulative evidence of Hawk's testimony that approximately thirty tickets were stolen while Burnworth was at Bernie's, she found the missing pull-tab tickets in the toilet, and Deputy Marshall Jullierat's subsequent viewing of the tickets that were laid out to dry in Hawk's office.

For all of these reasons, we cannot conclude that the trial court abused its discretion when it admitted the pull-tab tickets into evidence. Moreover, any error in the admission of the tickets would be harmless in light of the substantial, albeit circumstantial, evidence supporting the trial court's finding of guilt. See Boggs v. State, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010) (stating that a conviction may be based upon circumstantial evidence alone), trans. denied.

## II. Sentencing

Burnworth next argues the trial court abused its discretion by failing to issue a sentencing statement before imposing the advisory one and one-half year sentence for his Class D felony theft conviction. Sentencing decisions rest within the sound discretion of

7

the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. Id. To review a trial court's sentencing discretion, we must be told of its reasons for imposing the sentence. Id. "The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." Id. at 491; see also Ind. Code § 35-38-1-1.3 ("After a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes.").[3]

The trial court failed to list any reasons for ordering Burnworth to serve one and one-half years. When the trial court fails to enter an adequate sentencing statement, we may either remand for a new sentencing statement or exercise our authority to review the sentence under Indiana Appellate Rule 7(B). Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007); see also Williams v. State, 997 N.E.2d 1154, 1164 (Ind. Ct. App. 2013). We choose to exercise the latter option and review the sentence under Appellate Rule 7(B). We further note that Burnworth has also challenged the appropriateness of his sentence on appeal.

Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the

---

[3] Effective July 1, 2014, a trial court is no longer required to issue a sentencing statement when imposing the advisory sentence for a felony conviction. See Ind. Code § 35-38-1-1.3 (2014) ("After a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes *unless the court imposes the advisory sentence for the felony*.") (emphasis added).

offender." Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell, 895 N.E.2d at 1224. The defendant has the "burden to persuade us that the sentence imposed by the trial court is inappropriate." Shell v. State, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010).

Burnworth was ordered to serve the advisory one and one-half year sentence for his Class D felony theft conviction and his sentence was enhanced by an additional three years for his habitual offender status. See Ind. Code §§ 35-50-2-7, -8 (amended July 1, 2014). Burnworth argues that his aggregate four and one-half year sentence is inappropriate because 1) his offense did not cause a great deal of damage and 2) he waived his right to a jury trial, pleaded guilty to the habitual offender charge, and expressed remorse for his criminal history.

9

Burnworth's offense is a relatively minor theft. The total monetary loss to Bernie's was approximately $60. And Burnworth did not physically damage the property beyond causing a toilet to malfunction.

However, Burnworth's character more than supports the trial court's decision to impose an aggregate four and one-half year sentence. On the date he committed the offense, thirty-nine-year-old Burnworth had amassed twenty-one prior criminal convictions including possession of stolen property, receiving stolen property, theft, and three separate auto theft convictions. In 2005, Burnworth was adjudicated an habitual offender for the first time. Burnworth has also been placed on probation numerous times, and his probation has been revoked twice. Burnworth has spent the majority of his adult life incarcerated, and he continually demonstrates an inability to lead a law abiding life.

For all of these reasons, we conclude that Burnworth's aggregate four and one-half year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

**Conclusion**

Burnworth has not established any error in the admission of the pull-tab tickets he stole from Bernie's. Although the trial court abused its discretion when it failed to issue an adequate sentencing statement in this case, we are not required to remand for a new sentencing statement because Burnworth's four and one-half year aggregate sentence is not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

RILEY, J., and CRONE, J., concur.

10