
**Janice Fulton CHINN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 42S00–8601–CR–16.**

Supreme Court of Indiana.

Aug. 17, 1987.

Rehearing Denied Nov. 10, 1987.

. John F. Davis, Mary Jane Humphrey, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant was convicted by a jury of Conspiracy to Commit Murder, a Class A felony, and Murder. The court sentenced appellant to consecutive terms of fifty (50) years and sixty (60) years.

The facts are: Around June 15, 1984, Ronald Fulton was at the Franklin Bowling Lanes in Evansville having drinks with his girl friend when appellant, his wife, and Donna Stites, her daughter, came into the bar and an argument ensued. The bartender overheard appellant and Stites state that they would have a "contract" out on Fulton by morning.

After that evening, appellant and Fulton resumed a marital relationship. The reconciliation did not last and Fulton moved out of the house.

On the morning of July 3, 1984, Fulton arrived at his place of employment, the Terminex exterminator service in Evansville. After work, he returned home to discuss divorce plans with appellant and their three children. After this discussion, appellant left with the children to play Putt-Putt Golf. While appellant and the children were out, Stites and Frank Dorsey arrived and shot the victim several times, killing him. The victim's body was discovered in the trunk of a white Pontiac in St. Louis on July 8, 1984.

On July 7, 1984, Frank Dorsey and Donna Stites were seen at the Samlight Loan Company in St. Louis where they pawned the victim's golf clubs. Frank Dorsey's fingerprints were also found on the white Pontiac.

Appellant contends the trial court erred by admitting State's Exhibit No. 142, a letter written by coconspirator Frank Dorsey to appellant which implicated her in the crime.

While Dorsey was in jail on this charge, he wrote a letter addressed to "Miss Jan" demanding the money that she agreed to pay him. At the bottom of the letter Dorsey wrote a telephone number where his cell mate's wife could reach appellant. He signed the letter with his nickname "Nut" and requested that appellant tender $1,000 for each "book" until the amount owed was paid. Dorsey attempted to funnel the letter through his cell mate's wife who was to read it to appellant and then promptly burn it. However, the cell mate's wife gave the letter to her husband's lawyer.

Appellant contends that there was no foundation laid showing the existence of a conspiracy prior to the admission of the letter.

█ Evidence of acts or statements of parties to a conspiracy in furtherance of its objectives, is admissible against all the parties to the conspiracy. *Patton v. State* (1961), 241 Ind. 645, 175 N.E.2d 11. However, before the acts or declarations of one conspirator are admissible into evidence against a coconspirator, there must be some evidence, either direct or circumstantial, of the existence of a conspiracy. *Id.*

█ When Dorsey arrived at appellant's home on July 3, 1984, he was disguised in a dress and wig which belonged to appellant. The dress and wig were later found in the trunk of the white Pontiac along with victim's body. Hairs, fibers and bloodstains were also found in appellant's residence.

On July 5, 1984, appellant went to the bank and closed out her husband's Christmas Club account and withdrew the $1,000 in the account. She also sold the forty-five percent share of Terminex stock which the victim owned. In addition, a $250,000 life insurance policy on the victim was to be paid to Terminex as the beneficiary.

The above-related evidence, taken as a whole, would allow a trier of fact to infer that appellant had been engaged in an ongoing enterprise for the purpose of murdering her husband. It is an adequate circumstantial foundation for the existence of a conspiracy.

Appellant contends that the letter was inadmissible since it was written after the crime was completed.

█ Generally, only those acts and declarations which transpired or were made between the beginning and the ending of the conspiracy and in furtherance of its objectives may be shown against the asserted coconspirator who did not make the declaration. *Patton, supra.* However, for purposes of admitting a coconspirator's declaration, the conspiracy and its objectives will not always be terminated upon the successful commission of the underlying offense.

*Hicks v. State* (1937), 213 Ind. 277, 11 N.E.2d 171, *cert. denied* (1938), 304 U.S. 564, 58 S.Ct. 951, 82 L.Ed. 1531.

■ In *Wallace v. State* (1981), Ind., 426 N.E.2d 34, we held that hearsay statements made by a coconspirator regarding payment by the appellant for the murder of her husband were admissible as declarations of a coconspirator despite the fact they were made after the completion of the crime. In the case at bar, the conspiracy contemplated that appellant would pay Dorsey for his services. The trial court properly admitted the letter as a hearsay declaration by a coconspirator made in furtherance of the conspiracy's objective.

■ Appellant also objected to the handwriting exemplars used by the handwriting expert to determine that the letter addressed to "Miss Jan" was actually written by Dorsey. Appellant argues that these exemplars constituted hearsay and were therefore inadmissible.

Appellant's contention is without merit. The exhibits were not offered to show the truth of the matters asserted in the letters. Rather, they were offered to show Dorsey's handwriting in order to compare such handwriting with the letter addressed to "Miss Jan". The exhibits were used solely for the purposes of handwriting analysis and were therefore properly admitted. *Taylor v. State* (1986), Ind., 496 N.E.2d 561.

Appellant contends the evidence is insufficient to sustain the convictions of murder and conspiracy to commit murder. Specifically, appellant argues there is a lack of evidence of any overt act on her part.

The evidence demonstrates that appellant had threatened the victim, that she invited him to her home, then left, and that shortly thereafter he was murdered in the home.

Where the sufficiency of evidence is challenged on review, this Court will neither reweigh the evidence nor judge the credibility of the witness. *Harris v. State* (1985), Ind., 480 N.E.2d 932.

■ Under Ind.Code § 35-41-2-4 (Burns 1979), a person is liable for a criminal act if he knowingly or intentionally aids, induces, or causes another person to commit an offense. It is not necessary that the evidence demonstrate the accomplice personally participated in the commission of each element of the offense. *Wilson v. State* (1983), Ind., 455 N.E.2d 1120. Evidence that the accomplice acted in concert with those persons who actually committed the acts constituting the elements of the crime is sufficient to support a conviction on the accessory theory. *Id.*

■ Moreover, a person conspires to commit a felony when, with intent to commit a felony, he agrees with another person to commit the felony. The State must allege and prove that either the person or the persons with whom he agreed performed an overt act in furtherance of the agreement. Ind.Code § 35-41-5-2 (Burns 1985).

■ Upon reviewing the evidence in the instant case, we find more than sufficient evidence of probative value to justify the jury's verdict.

Appellant next contends it was a violation of her right against double jeopardy to have been tried, convicted and sentenced for murder and conspiracy to commit murder. Appellant argues that conspiracy to commit murder and murder are identical and cites *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. *Elmore* does not support this contention. In *Elmore*, we held that the defendant could be convicted for theft and conspiracy to commit theft, in that each charge requires proof that the other does not.

■ Murder requires proof of a killing, but not necessarily of an agreement with another person or persons to commit that killing. Conspiracy, on the other hand, requires proof of an agreement but proof of the killing is not necessary. The two offenses are not identical and do not rest on the same facts. Therefore, it was proper for appellant to be charged, convicted and sentenced on both offenses of murder and conspiracy to commit murder. *See Smith v. State* (1984), Ind., 465 N.E.2d 1105.

Appellant contends the trial court erred by denying her motion for continuance. Appellant argues that the failure of the air-conditioner in the courtroom prejudiced her because the jury was less attentive to testimony and appellant's counsel was too uncomfortable to adequately represent his client.

▮▮▮ Rulings on a non-statutory motion for continuance lie within the sole discretion of the trial court and will be reversed only for an abuse of that discretion. *Brown v. State* (1983), Ind., 448 N.E.2d 10.

▮▮▮ Appellant fails to demonstrate how she was prejudiced by the denial of her motion for continuance. Trials have been conducted in courtrooms without air-conditioning for centuries. Moreover, many courtrooms still operate during the summer months without the luxury of an air-conditioner, including the Supreme Court of Indiana. The trial court did not err.

▮▮▮ Appellant next contends the trial court erred by admitting evidence regarding the victim's life insurance policy and other financial matters. Appellant argues that an insurance policy payable to the victim's company is not indicative of a motive to murder the decedent.

We disagree. Terminex was named the beneficiary on the victim's $250,000 life insurance policy. Appellant was the devisee under the victim's will to receive his shares of stock in the Terminex Company. Moreover, appellant was a director of the corporation. Therefore, appellant would benefit from the proceeds of the life insurance received by the company.

Evidence of life insurance benefits is relevant to show a defendant's motive in a homicide case. *Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514. We find the trial court did not err in admitting this evidence.

Appellant also contends the trial court erred by admitting testimony regarding appellant's drug usage.

▮▮▮ Generally, evidence of crimes or criminal acts other than those charged is inadmissible upon the question of guilt. *Hill v. State* (1983), Ind., 445 N.E.2d 994.

However, such evidence may properly be introduced for the purpose of showing intent, motive, purpose, identity or a common scheme or plan. *Id.*

The trial court has broad discretion in ruling upon the relevance of such evidence. The test of relevance is whether the evidence has some tendency to render a desired inference more probable than it would be without the evidence. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083.

▮▮▮ In the present situation, appellant's testimony relating to drug purchases and other expenditures was limited to the time period prior to the victim's death. The victim had given appellant approximately $15,000 over the six months prior to his death. This money was spent on drugs, clothing, food and household expenditures. Appellant testified that she purchased at least $5,000 worth of drugs from Dorsey. Appellant and the victim had been experiencing marital difficulties for six to seven months. On the evening of his murder, the victim told appellant that the marriage was terminated.

We find the evidence was relevant to establish motive. There was no abuse of discretion in admitting this testimony.

▮▮▮ Appellant next contends the trial court erred by admitting pieces of appellant's dress, appellant's wig, a bag of fibers and hair, and a photograph of the bloodstained walls in appellant's residence.

The pieces of appellant's dress and wig were found in the trunk of the white Pontiac along with the victim's body. The hairs and fibers were examined and revealed human bloodstains.

Appellant urges that the items were irrelevant for the issues in the case.

We disagree. All evidence is relevant if it tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the defendant. *Larkin v. State* (1979), 271 Ind. 469, 393 N.E.2d 180. This evidence was relevant and material to the complete array of facts and circumstances surrounding the commission of the murder. We therefore hold that the exhibits were properly admitted in evidence.

Appellant finally contends the trial court erred by permitting the victim's father to testify regarding the sale of Terminex stock. Appellant sold her husband's shares of Terminex stock to the victim's father approximately one month after his death. Appellant argues that such testimony was irrelevant to the issues in the case.

In a criminal proceeding, the trial judge has broad discretion in ruling on the relevance of evidence. *Denton v. State* (1986), Ind., 496 N.E.2d 576. Evidence is relevant if it has a tendency to prove or disprove a material fact. *Hansford, supra.*

The testimony was relevant to show appellant profited by her husband's death. There is no error in the admission of this testimony.

The trial court is in all things affirmed.

SHEPARD, C.J., not participating.

DeBRULER, PIVARNIK and DICKSON, JJ., concur.