Charles PURTER, Appellant,

v.

STATE of Indiana, Appellee.

No. 89S00–8601–CR–115.

Supreme Court of Indiana.

Nov. 25, 1987.

Terrance W. Richmond, Milan, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal stemming from appellant's conviction of the crimes of rape, class A felony; robbery, class B felony; and criminal confinement, class B felony. Appellant was sentenced to 50 years for rape and 20 years each for robbery and confinement. All sentences were ordered to run concurrently.

There are five issues presented for consideration: (1) whether the trial court erred by sentencing appellant for both the crimes of rape and confinement; (2) whether the trial court erred in admitting State's Exhibit No. 2 into evidence; (3) whether the trial court erred by permitting L.W.'s boss to identify appellant; (4) whether there was sufficient evidence presented to support the convictions; and (5) whether the trial court erred in its sentencing determination.

These are the facts from the record which tend to support the determination of guilt: On February 26, 1985, L.W. was working as a secretary in an office in Richmond, Indiana. Shortly before 9:00 a.m. appellant entered and inquired about the possibility of janitorial work. L.W. told him none was available. Appellant then asked if he could use the restroom and L.W. told him there was one upstairs. Appellant returned and sat down and started talking with L.W. about the difficulty of finding a job in Richmond. When L.W. turned to look at something on her desk, appellant pulled her from her chair and put a knife to her throat. He demanded the money in the office and she told him that the only money was in her purse. Appellant took the money from L.W.'s purse and demanded more. L.W. said there was no more money and appellant threatened to slit her throat if she didn't get him more money. Still holding the knife to L.W.'s throat, appellant forced her upstairs and searched some drawers for money. He then ordered L.W. to lie on the floor and while holding the knife by her head, raped her. During the rape, L.W. started talking to appellant and told him she really liked him and if he came back later she'd give him all the money in the office. She also said someone could arrive at any minute and she would be fired so appellant terminated the rape. L.W. was allowed to get dressed and she and appellant went back downstairs. Appellant put the knife away on the way downstairs. L.W. kept talking to appellant to keep his mind off of the police and what had happened. She invited him to dinner that night and wrote a phony address on a piece of paper for him. L.W. asked appellant to get her a Coke and he left for a few seconds but promptly returned saying he was afraid to leave because he thought she would call the police. L.W. said he would have to trust her and that she wouldn't call the police. Appellant left again to get her a Coke and L.W. locked the door and telephoned for help. Merrit Gordon saw appellant buying a Coke that morning at the laundromat where L.W. sent him. L.W.'s boss identified appellant as the man who walked into his office later that day looking for the "blond woman".

## I

Appellant contends that confinement is inherently included in the offense of rape and that the trial court erred by sentencing appellant for both offenses, violating the prohibition against double jeopardy.

In order to determine whether offenses are the same under the double jeopardy clause, the United States Supreme Court has established the following standards:

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not...."

*Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 75 L.Ed. 306.

"This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes....' *Iannelli v. United States*, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1294, n. 17, 43 L.Ed.2d 616 (1975)."

*Brown v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. This court has adopted the Supreme Court standard:

"The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same and not whether the offenses spring from the same act or operative circumstances. * * * The ultimate focus is on the identity of the offenses, not on the identity of their source."

*Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893.

For rape, I.C. 35–42–4–1, the State had to prove that appellant knowingly or intentionally had sexual intercourse with L.W. compelled by force or imminent threat of force. To raise the crime to a class A felony, it was necessary to show the rape was committed while armed with a deadly weapon.

For criminal confinement, I.C. 35–42–3–3(a), the State had to prove that appellant knowingly or intentionally confined L.W. without her consent while armed with a deadly weapon.

While the charges of rape and confinement arose from a single incident, this fact does not preclude conviction for both. Each crime contains an element which the other does not. While confinement occurred in the act of rape before us, appellant confined L.W. prior to the rape and continually after the rape and robbery were both complete. He held a knife to her throat, dragged her upstairs and then refused to leave the office for fear if he left she would call the police. L.W. testified she was in fear because of the knife the entire time appellant was there. His presence following the rape and robbery, designed to prevent her from calling the police, was an act of confinement alone which is sufficient to support the verdict and is not inherently included in the charge of rape.

## II

■ State's Exhibit No. 2 was a pair of blue jeans which were introduced at trial and identified by L.W. as the jeans appellant was wearing when she encountered him. Appellant contends that a proper foundation for admission of the jeans was not established and further that they were the product of an illegal search and therefore inadmissible.

When Exhibit No. 2 was first offered for admission appellant objected on the grounds that there was a missing link in the chain of custody. The State then withdrew its request for admission. At a later stage in the trial, the jeans were again offered for admission. The record reflects appellant asking preliminary questions but does not show an objection at that time to the admission of the jeans nor does it show that the jeans were admitted. Since the record is unclear, we will give appellant the benefit of the doubt and address his contention that a proper chain of custody was not established. However, nowhere in the record is there an objection or motion to suppress the exhibit on the grounds it came from an illegal search. Therefore, we will not address that contention.

"The mere possibility of tampering will not render evidence inadmissible. *Starkey v. State* (1977), 266 Ind. 184, 361 N.E.2d 902. In the case of nonfungible goods, it is sufficient if the chain of custody strongly suggests the whereabouts of the exhibits at all times. *Gurley v. State* (1976), 264 Ind. 552, 348 N.E.2d 16. All evidence is not subject to

the chain of custody rule. *Woodard v. State* (1977), 267 Ind. 19, 24, 366 N.E.2d 1160, 1164. 'If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit it merely upon the basis of testimony that the item is the one in question and is in a substantially unchanged condition.' *McCormick on Evidence*, 2d Ed. § 212, p. 527. *In accord Duncan v. State* (1980), [274] Ind. [144], 409 N.E.2d 597, 601."

*Dier v. State* (1982), Ind., 442 N.E.2d 1043.

At trial Denise Wheat testified that State's Exhibit No. 2 was a pair of appellant's blue jeans that she gave to police on the day they came to her house. Detective Thompson testified that Exhibit No. 2 consisted of the blue jeans he received from Denise Wheat and that he handed them to Detective Benner. Detective Benner testified he received the jeans from Thompson and that he placed the case number, date and time of recovery, his initials and badge number, Thompson's name and badge number and Detective Shake's and Kleins' names all on the waist band of the jeans. He also put L.W.'s name and appellant's name on the evidence tag. He further testified that he gave the jeans to Detective Raver.

Raver testified Exhibit No. 2 consisted of the blue jeans recovered by Thompson and Benner and that these jeans were identified by L.W. as the ones appellant wore when he raped, robbed and confined her. Raver testified Benner had the jeans until they were placed in the evidence locker in the custody of Detective Jack Myers. Benner testified Raver had the jeans until then. Myers testified he took Exhibit No. 2 from the evidence room and brought it to court. L.W. identified the jeans as the ones appellant was wearing when she encountered him.

The discrepancy in the testimony of Benner and Raver only raises the mere possibility of tampering. The blue jeans are non-fungible items, not easily susceptible to tampering. They were unusual and readily identifiable due to large splotches, apparently from an attempt to dye them. The chain of custody established was sufficient to negate the possibility of tampering. Numerous people identified the jeans as belonging to appellant or as being recovered from his cousin. Appellant has not shown that the admission of the blue jeans was erroneous.

### III

L.W.'s employer was permitted to testify that on the afternoon of February 26, 1985, the day L.W. was attacked, appellant entered his office and asked about a "blond woman". When asked what the blond woman's name was, appellant turned around and left. L.W.'s employer followed him outside and asked if he was "Lee", the name appellant gave L.W. Appellant didn't respond and left rapidly.

Appellant claims this testimony was totally irrelevant and consequently prejudicial to his defense. The issue facing the jury was whether or not appellant was the individual who raped, robbed and confined L.W. He presented an alibi defense claiming he was elsewhere at the time the crimes were committed and later in the day.

"Evidence is relevant if it is material to an issue in the case and tends to make a desired inference more probable. Any evidence that connects the defendant with the crime is admissible. Evidence having some tendency to prove a material fact is relevant. Evidence is relevant if, in the light of general experience, it logically tends to prove or disprove some issue of fact. This Court has held the trial court is accorded wide latitude in ruling on the relevancy of evidence. If the evidence only inconclusively connects the defendant with the crime, this goes to the weight, not the admissibility of the evidence." [citation omitted]

*Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 651.

The testimony by L.W.'s employer identifying appellant as the person who came to his office the afternoon following the rape

was clearly relevant to the identity of the perpetrator. L.W. testified that she told appellant that if he came back later she would give him all the money in the office. Appellant had no reason to come into the office. He did not have business to conduct there. His unexplained appearance looking for the "blond woman" was relevant to the issue of his identity as the perpetrator of the crimes. His return substantiated L.W.'s testimony. There was no error in the admission of this evidence.

## IV

 Appellant claims there was insufficient evidence to sustain his convictions. Appellant points out there was no physical evidence such as fingerprints linking him to the crime, that he presented an alibi, that L.W. was inconsistent about the time appellant was in the office, that no one testified the blue jeans had a torn pocket, that L.W. could not identify the knife, that the note with a phony address was not produced and that there was no medical evidence L.W. had been raped.

We are essentially being asked to reweigh the evidence and to judge the credibility of the witnesses. This we will not do. *Wagner v. State* (1984), Ind., 471 N.E.2d 669, 670. The jury was aware of any discrepancies in testimony. Their function was to determine the truth of the matter. The uncorroborated testimony of the victim is sufficient to support a conviction in this state. *Smith v. State* (1985), Ind., 474 N.E.2d 71. L.W.'s testimony was not inherently incredible. There was sufficient evidence to support the verdict.

## V

Finally, it is contended that the trial court erred in its sentencing determination. A term above the presumptive sentence was imposed for each count. At the sentencing hearing, the judge gave the following justification for the sentences:

"In each instance the Court will find that there are no mitigating circumstances. The Court will find the presence of aggravating circumstances as to each count. Those aggravating circumstances are, first of all, the risk that this defendant will commit other criminal offenses. He has a history of criminal activity as shown by the pre-sentence report. He has prior criminal convictions of robbery and receiving stolen property in Pennsylvania in 1980 and in 1981 he has a conviction of theft also in the state of Pennsylvania. Those offenses so far as the Court can determine from the pre-sentence investigation are felony offenses. There are references to other criminal activity although those are the only convictions that the Court is aware of in regards to Mr. Purter. To reduce a sentence or any of these sentences would be to depreciate the seriousness of this offense. The Court also finds, as an aggravating circumstance, that there was the threat of death or bodily harm to the victim in this instance as to each of the offenses."

Sentencing is a decision within the trial court's discretion and will be reversed only upon a showing of manifest abuse of discretion. *Zachary v. State* (1984), Ind., 469 N.E.2d 744. The statement given by the trial judge at the sentencing hearing is sufficient to justify his imposition of the three terms above the presumptive sentences in this case.

The convictions are affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.