Darryl RIDING, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 2–1085–A–315.

Court of Appeals of Indiana, Second District.

Aug. 17, 1988.

As Amended Aug. 22, 1988.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant Darryl Riding (Darryl) appeals his convictions by the court of possession of more than thirty grams of marijuana[1] and of maintaining a common nuisance,[2] both class D felonies, claiming insufficiency of the evidence.

We affirm.

## FACTS

The facts most favorable to the judgment show that at about 9:00 p.m. on the evening of June 15, 1984, Indianapolis Police Officers executed a search warrant at a residence in Indianapolis. Upon arriving at the residence, Officer James Wurz (Wurz) identified himself and others as police officers, announced their intention to execute a search warrant, and asked who was in charge. When Michael Riding (Michael), Darryl's brother, responded affirmatively to Wurz's question, Wurz read the search warrant to him. Wurz had smelled burning marijuana when he entered the house. After another officer pointed out several marijuana "roaches" in an ash tray, Wurz placed all those persons present at the house under arrest. They were then instructed to stand at the pool table in the family room of the house and empty their pockets.

During the search of the house, the police discovered that one of the bedrooms of the house was locked. Michael told Wurz that the locked room belonged to Darryl and that Darryl had the only key to the

---

1. Ind. Code 35–48–4–11 (1982).

2. IC 35–48–4–13 (1982 and Supp.1987).

room. Darryl was not present at the time of the search. The police unsuccessfully attempted to unlock the door with keys discovered during the search of the house and with keys taken from those under arrest. Ultimately, the police broke open the door to the room.

Upon entering the locked room, Wurz observed a clear plastic bag hanging from a small scale on the closet door. Later laboratory analysis established that the bag contained 25.58 grams of marijuana. A plastic trash bag containing four bags of leafy material was also found on the floor of the closet. Three of the bags each contained 451 grams of marijuana, the fourth bag contained 364 grams of marijuana. Wurz also found in the room $4,070 in cash, a 35mm camera, a color video camera, gold jewelry, and a pound scale. On top of the dresser were personal papers belonging to Darryl and a bottle of men's cologne. The papers included automotive repair receipts, automobile titles, a draft card, a checkbook, a savings account book, personal letters, and business correspondence.

Michael and Darryl both testified at their joint trial. Michael denied ever stating that the locked bedroom belonged to Darryl. Darryl testified that he did not reside at the house at 4326 North Lesley and that his sister, Sh'ron Hill, owned the house and had taken his personal papers by mistake or for the purpose of completing his tax returns. The defense also introduced supporting testimony of others who were present at the time of the search. The trial court acquitted Michael but found Darryl guilty of possessing over thirty grams of marijuana and of maintaining a common nuisance. Darryl now appeals from the denial of his timely motion to correct error.

## ISSUES

Darryl presents one issue, which we have restated, for review:

1. Was the evidence presented at trial sufficient to support Darryl's convictions of possessing more than thirty grams of marijuana and of maintaining a common nuisance?

We also must address another issue raised by Judge Sullivan in his dissent:

2. Was Darryl's conviction of maintaining a common nuisance a lesser included offense of possession of more than thirty grams of marijuana?

## DECISION

ISSUE ONE—Was the evidence presented at trial sufficient to support Darryl's convictions of possessing more than thirty grams of marijuana and of maintaining a common nuisance?

PARTIES' CONTENTIONS—Darryl contends that insufficient evidence existed of his control over the premises and the marijuana to support his convictions.

The State responds that sufficient evidence was produced at trial to support the convictions.

CONCLUSION—The evidence was sufficient to support Darryl's convictions of possessing more than thirty grams of marijuana and of maintaining a common nuisance.

In reviewing Darryl's claim, we follow our long-established standard of review. *See, e.g., Smith v. State* (1985), Ind., 474 N.E.2d 71. Darryl's argument that the State never established that he was the perpetrator of the crimes amounts to a request for us to evaluate the credibility of witnesses and to reweigh the evidence. This we cannot do. *See id.*

Possession of a controlled substance may be founded on proof of actual or constructive possession. *Martin v. State* (1978), 175 Ind.App. 503, 372 N.E.2d 1194. Constructive possession is defined as "an intent and capability to maintain control and dominion over" the controlled substance. *Thomas v. State* (1973), 260 Ind. 1, 4, 291 N.E.2d 557, 558; *see also Lewis v. State* (1985), Ind.App., 482 N.E.2d 487. The capability to maintain control is the ability to reduce the controlled substance to a personal possession or to direct its disposition or use. *Martin, supra.* While a possessory interest in the premises is generally sufficient to show a person's ability to exercise control over drugs found on the premises, exclusive control of the premises

permits the additional inference that the person intended to maintain control of the drugs. *Id.*

■ The room where the marijuana was found was locked, and a search of the house and those present was unsuccessful in producing a key to unlock the door. Michael stated that the room was Darryl's and that Darryl had the only key. Additionally, Wurz found Darryl's personal effects, including business papers and private letters, scattered on top of the dresser in the room. This was sufficient evidence from which the trial court could reasonably find that Darryl had exclusive control of the room and that he therefore possessed the marijuana found therein.

■ In order to prove that Darryl maintained a common nuisance, the State was required to show that Darryl knowingly maintained a place used for unlawfully keeping or selling controlled substances. IC 35–48–4–13(b) specifically requires proof that a defendant maintained "a building, structure, vehicle, *or other place....*" (Emphasis supplied). Thus, for purposes of satisfying the common nuisance statute, the State was not required to show that Darryl maintained the entire building. In the information, Darryl was charged with maintaining "a building ... said building being used by Darryl Riding ... to unlawfully keep or sell controlled substances...." *Record* at 4. While the evidence tended to show only Darryl's control of a single room, we do not view this as a fatal variance between the evidence and information. Darryl was not misled by the variance as the room was part of the residence alleged in the information. Further, Darryl did not make such a claim at trial. *See, e.g., Harmon v. State* (1988), Ind., 518 N.E.2d 797 (difference between dates of prior convictions and those proven by State in habitual offender count was not a fatal variance).

■ Darryl's exclusive control of the room where the marijuana was found was sufficient evidence to establish that he knowingly maintained a place for keeping controlled substances. *Cf. Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, *cert. de-*

*nied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336. The large quantity of marijuana found in the room and the presence of a scale employed in the weighing of marijuana permit the inference that Darryl maintained the room for the purpose of selling marijuana. *Cf. Meiher v. State* (1984), Ind., 461 N.E.2d 115 (accused's possession of a relatively large quantity of controlled drugs was sufficient evidence of intent to deliver).

ISSUE TWO—Was Darryl's conviction of maintaining a common nuisance a lesser included offense of possession of more than thirty grams of marijuana?

CONCLUSION—The offense of maintaining a common nuisance was not included within the offense of possession of marijuana because the nuisance conviction required proof of an additional fact, i.e., the maintenance of a place, which was not required by the possession charge.

■ Darryl was not subjected to double jeopardy by his convictions of possession of marijuana and of maintaining a common nuisance. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, *quoted in Elmore v. State* (1978), 269 Ind. 532, 534, 382 N.E.2d 893, 895. In following *Blockburger,* our supreme court rejected a test which permitted a finding of double jeopardy whenever two criminal counts arose from "one set of operative circumstances." *Elmore, supra* at 538, 382 N.E.2d at 897. The danger of such a rule is

"two-fold: (1) by focusing upon whether the *same act* gave rise to the offenses, we tend to lose sight of the express language and purpose of the Double Jeopardy Clause, that is, to prohibit reprosecution and multiple punishment for the *same offence,* and; (2) by focusing on the sameness of the act rather than of

the offenses, we reach results which go beyond what is required by the Clause. The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances."

*Id.* at 539, 382 N.E.2d at 897.

Under a *Blockburger–Elmore* analysis, each of Darryl's convictions required proof of an additional fact which the other did not. Darryl's exclusive control of the room permitted the court to infer that Darryl constructively possessed the marijuana found therein. Proof of Darryl's *possession of marijuana,* however, is not an element of maintaining a common nuisance. IC 35–48–4–13; *see also Sayre, supra* (offense of maintaining a common nuisance did not require proof that defendant possessed controlled substance). Similarly, proof of Darryl's *maintenance of a place* for keeping or selling marijuana is not an element of the offense of possession of marijuana. IC 35–48–4–11; *see also Thompson v. State* (1929), 89 Ind.App. 555, 167 N.E. 345, *trans. denied* (legislature was entitled to enact statute making each step leading up to the sale of intoxicating liquor unlawful; possession of intoxicating liquor and maintenance of a place for persons to drink liquor were separate offenses).

The dissent questions the continuing validity of the *Blockburger–Elmore* rule after the decision by our supreme court in *Hall v. State* (1986), Ind., 493 N.E.2d 433. The supreme court in *Hall* determined that a conviction of child neglect was a lesser included offense of reckless homicide. *Hall,* however, is entirely consistent with the *Blockburger–Elmore* rule; a rule, by the way, that *Hall* expressly followed. *See Hall, supra,* at 435.[3]

In *Hall,* the victim's parents were convicted of reckless homicide and neglect of a dependent after the victim died from lack of medical care for bronchial pneumonia. The conduct causing death, for purposes of the reckless homicide convictions, was the omission to perform the parental duty of providing medical care. The offense of reckless homicide therefore implicitly contained every element of the child neglect offense, which sought to punish the defendant parents for their failure to provide their child with medical care. The parents' neglect of a dependent thus inhered in the element of the omitted duty to provide medical care in the reckless homicide conviction.

Darryl's convictions present a classic *Blockburger–Elmore* double jeopardy question. Each offense, while arising from a single transaction, was established by proof of different facts. The crimes of possession of marijuana and maintaining a common nuisance do not contain any hidden elements arising from an omitted duty, as shown in *Hall.* We therefore conclude that Darryl's conviction for maintaining a common nuisance was not an included lesser offense in his conviction for possession of marijuana.

Affirmed.

SHIELDS, P.J., concurs.

SULLIVAN, J., dissents in part and concurs in part.

SULLIVAN, Judge, dissenting in part, concurring in part.

I would affirm the possession conviction but would reverse the maintaining a common nuisance conviction. My dissent as to the latter conviction is premised upon two grounds. First, I do not believe that the evidence is sufficient to show that the defendant had any degree of control over the building, other than over the locked room

3. We also observe that after its decision in *Hall,* our supreme court has continued to follow the *Blockburger–Elmore* rule. *See, e.g., Jones v. State* (1988), Ind., 518 N.E.2d 479 (robbery and confinement held separate offenses); *Purter v. State* (1987), Ind., 515 N.E.2d 858 (rape and confinement arising from same incident held separate offenses); *McDonald v. State* (1987), Ind., 511 N.E.2d 1066 (criminal confinement and attempted battery held separate offenses); *Chinn v. State* (1987), Ind., 511 N.E.2d 1000 (murder and conspiracy to commit murder held separate offenses).

in which the marijuana was found. (The locked room control was necessary for the possession conviction.) I therefore believe the evidence did not prove that the defendant "maintained the building" as charged. Indiana Code 35–48–4–13 (Burns Code Ed. Supp.1988) does permit conviction for maintaining an "other place." However, the only "other place" here involved is the room in which his personal papers were found. The majority opinion specifically and clearly justifies the common nuisance conviction upon control over the room itself. In this connection it is important to note that Riding was not charged with visiting a common nuisance, i.e., the building, as opposed to maintaining it. *See Mayotte v. State* (1977) 3d Dist., 172 Ind.App. 252, 360 N.E.2d 34, *trans. denied; Bezell v. State* (1976) 2d Dist., 170 Ind.App. 356, 352 N.E.2d 809; *Wells v. State* (1976) 3d Dist., 170 Ind.App. 29, 351 N.E.2d 43.

*Certain v. State* (1973) 261 Ind. 101, 300 N.E.2d 345, held that "keeping a common nuisance (the equivalent of maintaining)" was not a lesser included offense of illegal possession. The analysis through which the *Certain* court reached its conclusion focused upon the elements of the two offenses.

Under the facts of *Certain,* the possession conviction is justified without regard to the premises in which that possession took place. The case did not hold that commission of a common nuisance offense involving possession by defendant would justify a separate and additional conviction for the possession itself, nor did it hold that possession could never be a lesser offense of the common nuisance violation. *See Bezell, supra,* 352 N.E.2d 809. This gives rise to the second, but related basis of my dissent.

Although under *Blockburger v. United States* (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, the act of maintaining a common nuisance would seem to be separate from the act of unlawful possession, in *Hall v. State* (1986) Ind., 493 N.E.2d 433, our Supreme Court held that if one act is the instrumentality by which the other act is

committed, a conviction will lie for one but not both acts.

In *Howard v. State* (1981) 3d Dist. Ind. App., 422 N.E.2d 440, the Third District held that under the facts there present, the offenses of possession and visiting a common nuisance did not merge because visiting did not require possession and possession was not dependent upon visitation. *See also Sayre v. State* (1984) 3d Dist. Ind.App., 471 N.E.2d 708, *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336, (conviction for maintaining common nuisance proper when tenants, but not the defendant, were guilty of possession). Under the facts before us, and as noted by the majority, the only premises which could be maintained by the defendant was the room in which the marijuana constituting the possession charge was found. Therefore, although it may be said that possession is not a *necessarily* included offense of common nuisance, under the particular charge and circumstances here it is an included offense.

The presence of the "large quantity of marijuana found in the room and the presence of a scale employed in the weighing of marijuana" is essential to the majority's affirmance of the maintaining conviction. (At 189.) This very presence is the essence of the possession conviction. Therefore, as in *Hall,* "no additional facts were necessary to prove the perpetration of" possession charge as opposed to the maintaining a nuisance charge. 493 N.E.2d at 436.

The majority seeks to dilute the thrust of *Hall* by reference to four cases decided by the Supreme Court subsequent to the *Hall* decision. In my view that effort fails. In *Jones v. State* (1988) Ind., 518 N.E.2d 479, the confinement was separate and distinct from the robbery. In addition to ransacking the residence and attempting to take valuables, the defendants ordered the victims to lie on the floor and bound them with duct tape. In *Purter v. State* (1987) Ind., 515 N.E.2d 858, the defendant was convicted of robbery, rape and confinement. Our Supreme Court noted that the victim was robbed before defendant took her upstairs and raped her and that al-

though a confinement occurred in the act of rape, "appellant confined L.W. prior to the rape and continually after the rape and robbery were both complete." 515 N.E.2d at 860. Quite clearly, *Chinn v. State* (1987) Ind., 511 N.E.2d 1000, is inapplicable to the situation before us. *Chinn* involved a classic case of permissible convictions for two separate offenses, i.e., conspiracy to commit murder and murder. In *Chinn* the conspiracy had been committed and completed before the killing took place.

The fourth case cited by the majority, *McDonald v. State* (1987) Ind., 511 N.E.2d 1066, does not cite or deal with the application of *Hall*. The case involved criminal confinement and attempted battery. The court discussed the *Elmore* test and although the opinion contains some language which might be construed as limiting the principle enunciated in *Hall*, the decision observed that the trial court had in fact applied the *Hall* rationale:

"Furthermore, the trial court found that the attempted battery conviction was consumed by the criminal confinement conviction, and Appellant was sentenced only on the criminal confinement conviction. We find no error here." 511 N.E. 2d at 1069.

Accordingly, under the authority of *Hall v. State, supra*, 493 N.E.2d 433, I would affirm the conviction for possession but would reverse the conviction for maintaining a common nuisance.