**Kelvin MOORE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–9204–CR–113.**

Court of Appeals of Indiana,
Fifth District.

May 18, 1993.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Chief Judge.

ON PETITION FOR REHEARING

Subsequent to our memorandum decision of December 2, 1992, 604 N.E.2d 1267, the

appellant filed a petition for rehearing. We grant the petition for rehearing, vacate our prior decision and reverse Moore's convictions for dealing in cocaine as a class B felony and possession of cocaine as a class C felony.

Moore raises several issues for review, but we address only the dispositive issue of whether the evidence is sufficient to support Moore's convictions.

In his appeal, Moore contends that the evidence presented by the state is insufficient to sustain his conviction for either dealing in cocaine or possession of cocaine. Specifically, Moore argues that the state has failed to prove beyond a reasonable doubt that he had control over the contraband so as to establish that he possessed it. We agree.

When we review the evidence supporting a conviction, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is any substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850.

The state bore the obligation of producing substantial evidence on each element of the two offenses of which Moore was convicted. According to the relevant portions of Ind.Code § 35–48–4–1:

"(a) A person who:

     \*    \*    \*    \*    \*    \*

(2) possesses, with intent to:

     \*    \*    \*    \*    \*    \*

(c) deliver ...

     \*    \*    \*    \*    \*    \*

cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; commits dealing in cocaine or a narcotic drug, a Class B felony...."

Pursuant to the relevant portions of I.C. § 35–48–4–6:

"(a) A person who, without a valid prescription or order of a practitioner act-ing in the course of his professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) classified in schedule I or II commits possession of cocaine or a narcotic drug, a Class D felony, except as provided in subsection (b).

(b) The offense is:

(1) A Class C felony if the amount of the drug involved (pure or adulterated) weighs three (3) grams or more...."

We find no substantial evidence in the record to support the element of possession common to both offenses for which Moore was convicted. Instead, the evidence reveals the following. On October 12, 1990, in response to information that narcotics were being sold out of apartment two at 3502 North Salem, the Indianapolis police force sent in an informant to purchase cocaine. Approximately thirty minutes later, the police executed a search warrant at that address. The police entered the unlocked apartment and, in the ensuing confusion, spotted eight small yellow bags laying out in plain view on a cocktail table. Inside those bags, the police discovered 1.1257 grams of crack cocaine. The police also spotted a brown leather pouch lying on the table. Inside the pouch were two large sandwich bags, and inside those two bags were individually wrapped packages containing more crack cocaine. The police recovered drug paraphernalia from a back room. On the ground outside of the apartment building, between the building and some bushes, the police found more crack cocaine and a set of keys to the apartment. The police detained two men, Mr. Pollard and Mr. Robinson, who were standing outside of the apartment at the time of the drug raid.

After forcing everyone inside the apartment to the floor, patting them down and handcuffing them, the police seated the individuals on a couch. Moore, who had been lying on the couch when the police entered the apartment, was one of those individuals. Moore appeared intoxicated and disoriented at the time, and the couch upon which he had been reclining was ap-

proximately four feet from the tables where the police found the drugs. A search of Moore revealed that Moore had no drugs, no money and no paraphernalia on his person.

■ The state does not argue, and there is no evidence to suggest, that any of the cocaine seized by the police was on Moore's person. Generally, however, where actual possession is absent, constructive possession will sustain a conviction of a drug offense. *Young v. State* (1985), Ind., 478 N.E.2d 50. To prove constructive possession of contraband by an accused who is present on the premises where contraband is found, there must be additional elements of intent and capability to maintain control and dominion over the substance. *Perry v. State* (1981), Ind.App., 418 N.E.2d 1214. . The capability to maintain control, as would establish constructive possession, is the ability to reduce the controlled substance to one's personal possession or to direct its disposition or use. *Riding v. State* (1988), Ind.App., 527 N.E.2d 185. "While a possessory interest in the premises is generally sufficient to show a person's ability to exercise control over drugs found on the premises, exclusive control of the premises permits the additional inference that the person intended to maintain control of the drugs." *Id.* at 187–188. In a manufacturing type setting, a defendant's presence does not compel a conviction but it does present a *prima facie* case of possession. *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412, 417.

> "In the case of simple possession:
> '[M]erely being or having been present in a place where marijuana is found is not sufficient proof that such person is in possession of the drug where he is not in exclusive possession of the place.' *Arant v. State* (1972), Fla. App., 256 So.2d 515, 516.
> The reason is that normally, without more, no 'natural probative force' can be placed upon mere presence at a place where narcotics are found. One could just as easily be present innocently as guiltily. Although evidence of presence would certainly be relevant, it alone

would not be sufficient to sustain a conviction."

*Ledcke,* 296 N.E.2d at 418.

■ The state's argument in the case before us unfolds as follows. First, Moore was inside an apartment where cocaine was discovered. Second, because Moore had nonexclusive control over this apartment, the state had to prove both that Moore knew of the cocaine's presence and that he had control over it. Third, the state proved these two elements by introducing evidence that, when the police entered the apartment, Moore was within a few feet of the drugs, the drugs were in plain view of Moore, and Moore was in an intoxicated and disoriented state.

The state's argument here is flawed because the state failed to prove that Moore had nonexclusive control over the apartment. A careful review of the record indicates that the state failed to prove that Moore exercised any control over the apartment whatsoever. At trial, evidence on who exercised control of the apartment where the drug raid occurred surfaced through the following questions and answers provided by the prosecutor, assorted defense counselors, two of the arresting officers and the trial court judge:

> "Q. Okay. Did you ever discuss anything with Mr. Pollard?
>
> A. No, other than—well, other than, uh, I did ask him about some of the mail that we had recovered had his name on it.
>
> THE COURT: What did he tell you?
>
> A. And he stated that—he did state that he did not stay there at the present moment and, uh ...
>
> \* \* \* \* \* \*
>
> THE COURT: Sir, I am not quite sure where Mr. Pollard was when you fellows came up.
>
> A. Okay, he was outside when we first arrived and he was brought inside.
>
> THE COURT: You mean outside the apartment or outside the building?
>
> A. Outside the building—outside the building.

THE COURT: Did you bring him back into the building?

A. Yes, we brought him inside the apartment.

THE COURT: You knew who he was.

A. We identified, yes.

\*   .   \*    \*    \*    \*    \*

Q. Detective Lewis, when we are talking about the people in the apartment, who are we talking about out of the four defendants who are here today?

A. Okay, we are talking about Lewis, Avery and Moore. Those three.

\*    \*    \*    \*    \*    \*

THE COURT: But I don't quite understand what you arrested Mr. Pollard for? I understand you arrested the rest of them because they were in there and they had Cocaine. He is standing outside. Did you arrest him outside?

A. Uh, no, he was not arrested outside.

THE COURT: Where was he arrested?

A. Inside.

THE COURT: Base [sic] on what?

A. The fact that a key was—information, the mail inside the premises. We believed that Mr. Pollard had control of the premises.

THE COURT: You believe he was the house man?

A. Yes.

\*    \*    \*    \*    \*    \*

Q. In your investigation did you try to determine who was in possession of this apartment?

A. During our investigation?

Q. Yes?

A. Yes.

Q. And how did you proceed toward doing that?

A. I came up with (inaudible) the telephone check. There was no phone there. At that particular time I (inaudible) to see if there was any mail, checked the mailbox downstairs. There was no name on it.

Q. Okay, and that night what did you do in furtherance of that?

A. At that particular time once the search was done there was (inaudible) at the address there.

Q. Do you recall who the mail was addressed to?

A. The mail was—a few items that was—it had Duane Pollard on it. I remember specifically a tax form, tax return, whatever it was, a tax statement that had Duane Pollard and the address of 3502 North Salem, Apartment Two.

Q. Anything else?

A. There was another piece of mail with the same type information.

\*    \*    \*    \*    \*    \*

Q. Sergeant Smith, what else did you do in your participation in this search?

A. I did several other things, sir. I had been called back out to the front of the apartment where there were two subjects that were on the front steps when we first went up. They were being held by uniform officers because we didn't know whether they were involved in our investigation or not.... One subject—I'm trying to remember their names. I believe their names were Pollard and, uh, I don't recall the other subject's name but it was outside.

THE COURT: Why was Mr. Pollard arrested, Sergeant?

A. Mr. Pollard was arrested, sir, I believe because of the fact that he had rented the apartment at one time.

THE COURT: How did you know that?

A. Well, I checked in records after our investigation took place and we found some paper work and other items that were inside the apartment.

\*    \*    \*    \*    \*    \*

(Record, pp. 144–150, 232–233, 275–276.)

Mr. Pollard testified that he had lived in the apartment where the drugs were found for thirteen months until he was evicted in September of 1990. Some of Mr. Pollard's belongings were still in the apartment on the day of the drug raid. Prior to their

joint arrest following this drug raid, Mr. Pollard had not met Mr. Moore.

In this simple possession case, the state failed to make any connection between Moore and the premises where the contraband was seized, other than Moore's presence in the apartment at the time of the raid. At best, the state proved that Moore was present in the apartment when the police executed their search warrant, that Moore had knowledge of 1.1257 grams of crack cocaine present in the apartment, that Moore was intoxicated and disoriented when the police arrived and that Pollard exercised a possessory interest in the premises where the raid occurred. The state failed to prove that Moore had the capability to maintain control over the seized contraband. For that reason, the state failed to prove that Moore had constructive possession of the seized contraband.

■ Because the state failed to produce substantial evidence on the element of possession common to both of the offenses for which Moore was convicted, we reverse. In addition, because we have found the evidence insufficient to sustain the court's judgment, the double jeopardy clause precludes a second trial for Moore; the only just remedy available is the entry of judgment of acquittal. *Smith v. State* (1979), 270 Ind. 479, 386 N.E.2d 1193.

**REVERSED.**

STATON, J., concurs.

BARTEAU, J., dissents with opinion.

BARTEAU, Judge, dissenting.

I respectfully dissent from the majority opinion granting rehearing and reversing Moore's conviction. I remain convinced that the evidence presented by the prosecution was sufficient to support the trial court's determination that Moore was guilty of the offense of dealing in cocaine and that any decision to the contrary by this court amounts to an impermissible reweighing of the evidence.

If a person has exclusive possession of premises containing contraband, an inference is permitted that the person knows the contraband is present and has the in-

tent and capability to control the contraband. *Young v. State* (1990), Ind.App., 562 N.E.2d 424. When possession of the premises is non-exclusive, that same inference is not permitted absent some additional circumstances indicative of knowledge of the presence of the contraband and the ability to control it. *Carnes v. State* (1985), Ind. App., 480 N.E.2d 581. Among the often recognized "additional circumstances" are (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs are in "plain view"; and (6) location of the contraband in close proximity to items owned by the defendant. *Id.* Exclusive possession is not required and contraband can be possessed jointly by several persons. *Martin v. State* (1978), 175 Ind. App. 503, 372 N.E.2d 1194 (quoting *Feltes et al. v. People* (1972), 178 Colo. 409, 498 P.2d 1128).

In the case before us, Moore did not have exclusive possession of the premises because several other people were also present. Nevertheless, the evidence sufficiently supported the trial court's judgment that Moore had the capability and intent to exercise dominion and control over the cocaine, and thus possession of it, because, in addition to his presence at the scene, the State established the "additional circumstances" of (1) the contraband being in plain view of Moore and the others; and (2) Moore's close proximity (four feet) to the contraband. The majority acknowledges that the State proved both that Moore was present in the apartment containing cocaine and that he knew the cocaine was there, but contends that the State failed to prove that Moore had the capability to maintain control over the contraband.

However, our supreme court has routinely held that presence in a dwelling containing drugs combined with knowledge of the presence and nature of the drugs, will suffice to support a conviction under a constructive possession theory. *See Bergfeld v. State* (1988), Ind., 531 N.E.2d 486 (defendant's attempt to flee, combined with his having spent the night in the room, provid-

ing money for its rental and intent to spend another night, sufficiently established that "he knew of the presence and nature of the drugs in the motel room"); *Davenport v. State* (1984), Ind., 464 N.E.2d 1302 ("[w]hen, however, possession of the premises is not exclusive, the inference of intent must be supported by additional circumstances pointing to an accused's knowledge of the nature of the controlled substances and their presence"); *Haynes v. State* (1982), Ind., 431 N.E.2d 83, ("[i]t does appear that Indiana has adopted the rule that if possession of property is non-exclusive, the prosecution must bring forth some evidence which would indicate the defendant had knowledge of the drug. If, in addition to non-exclusive possession, there had been flight, furtive gestures, close proximity by Martin to the contraband, close proximity of the contraband to items owned by Martin, or if the contraband was in plain view, a conviction might be sustained" (quoting *Martin*, 372 N.E.2d at 1200) (citation omitted)).

The majority opinion states, "The state's argument here is flawed because the state failed to prove that Moore had nonexclusive control over the apartment. A careful review of the record indicates that the state failed to prove that Moore exercised any control over the apartment whatsoever" and goes on to quote testimony concerning another's possessory interest in the premises. I have found no Indiana law, nor has the majority cited any, which requires the State to prove a defendant had a *possessory interest in the premises* in order to convict him of constructive possession of contraband. To the contrary, convictions based on a theory of constructive possession, where the defendant is a mere visitor in the dwelling, are routinely upheld. *See Everroad v. State* (1982), Ind., 442 N.E.2d 994 (in this joint appeal, "Smith did not live on the premises although he had visited there several times, including the previous night;" conviction for possession and dealing affirmed); *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412 (nonresident of apartment convicted of possession of marijuana which was in plain view). The majority appears to confuse capability to exert dominion and control over the *substance* with capability to exert dominion and control over the *dwelling*.

I am convinced that Moore's presence in the apartment, combined with the additional factors of plain view and close proximity, is sufficient to withstand a challenge to the sufficiency of the evidence. Because of these circumstances, it was within the province of the trial court to find that Moore was aware of the presence and the nature of the cocaine and able to exert control over it. A finding to the contrary would permit a group of drug dealers to lease an apartment in someone else's name and operate a distribution business out of it without fear of arrest and conviction. When police arrived, they could merely act nonchalant about the huge pile of drugs in the middle of the dining room table and the only recourse available to the police would be to confiscate the merchandise. Consequently, I dissent.